ROYAL ZENITH
CORPORATION, Appellant,

v.

Jesse MARTINEZ, Appellee.

No. 10–84–195–CV.

Court of Appeals of Texas,
Waco.

July 25, 1985.
Rehearing Denied Aug. 22, 1985.

Beverly Willis, Naman, Howell, Smith & Lee, P.C., Savannah Robinson, Smith, Ralston, Russell & Wright Waco, for appellant.

Dale W. Williams, Williams, Pattillo & Squires, Waco, for appellee.

## OPINION

THOMAS, Justice.

This is an appeal from the denial of a motion for a new trial following the entry of a default judgment against Royal Zenith Corporation (Royal Zenith). Jesse Martinez, plaintiff-appellee, sued Royal Zenith, defendant-appellant, for personal injuries that he received while cleaning a machine that Royal Zenith had designed and manufactured. When Royal Zenith failed to answer Martinez' petition, the court entered a default judgment against Royal Zenith and awarded Martinez $750,000 damages. Royal Zenith then filed a motion to set aside the default judgment and to obtain a new trial, but the motion was denied following a hearing. Royal Zenith appeals claiming that the court abused its discretion when it denied the motion for a new trial.

The evidence at the hearing established that Martinez' petition was originally served on C.T. Corporation, Royal Zenith's registered agent for service of process in Texas. C.T. Corporation forwarded the petition to Jerome Greenstein, a senior vice-president and the chief financial officer of Royal Zenith. Greenstein sent a copy of the petition to Stuart Poller, Royal Zenith's in-house counsel, and the original petition, accompanied by a transmittal letter, to Hugo Vivero, the manager of financial analysis and cost accounting for Royal Zenith. Vivero indicated that he had received the petition by initialling the transmittal letter and sending it back to Greenstein. Under Royal Zenith's procedure, Vivero was then responsible for forwarding copies of the petition to: (1) Johnson & Higgins, the insurance brokerage firm for Royal Zenith; (2) James Doumas, the risk manager for Tyson-Kissner-Moran Corporation, Royal Zenith's parent corporation; and (3) General Adjustment Bureau (GAB), the servicing agent for American International Group (AIG), Royal Zenith's liability insurance carrier. However, none of these recipients received a copy of Martinez' petition, and an answer was never filed.

After the answer date had passed without an answer being filed, Martinez' counsel, Dale Williams, attempted to contact someone at Royal Zenith to inform them that they were in default. Williams discussed the matter with Peter Ryan, who was a claims adjuster for Liberty Mutual Insurance Company, which had previously been Royal Zenith's liability carrier. Ryan then called Doumas, the risk manager for Royal Zenith's parent corporation, to inform him of the default. Doumas thought that Ryan was referring to *Meister v. Royal Zenith Corp.*, a Florida suit in which a default judgment had been entered against Royal Zenith a few weeks earlier. Doumas thanked Ryan for calling, explained that he had already taken care of the matter and dismissed Ryan's call from his mind. When no answer was filed following Williams' attempt to contact Royal Zenith, Martinez presented evidence of his damages to the trial court and received a default judgment for $750,000. Upon receiving notice of the default judgment, Royal Zenith hired local counsel to file a motion to set aside the default judgment and to obtain a new trial.

To obtain a new trial after the default judgment, Royal Zenith had the burden of: (1) proving that its failure to answer was not intentional or the result of conscious indifference on its part, but was due to mistake or accident; (2) setting up a meritorious defense; and (3) proving that a new trial would not injure Martinez or cause a delay. *See Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939). At the hearing on the motion for a new trial, Royal Zenith agreed to pay all of Martinez' costs in taking the default judgment and defending the motion for a new trial. The parties also agreed that Royal Zenith had set up a meritorious defense and that granting the motion for a new trial would not cause a delay to Martinez. Thus, the only question for the trial court to determine was whether Royal Zenith's failure to answer was intentional, the re-

sult of conscious indifference or merely an accident or mistake.

Royal Zenith tried to show that its failure was not intentional or the result of conscious indifference. To support its claim, Royal Zenith argued that it had established a procedure for making sure that petitions were channeled to the proper persons so as to avoid default judgments. It contended that the mere existence of this procedure was evidence that the company was not indifferent toward lawsuits filed against it. Royal Zenith contended that, in this instance, something unknown had happened to Martinez' petition which prevented it from being forwarded to GAB in the usual manner. Royal Zenith suggested that the papers were lost in the mail because GAB had changed addresses and personnel without notifying it. According to Royal Zenith, no one was aware of the papers on the day the answer was due and the documents have never been found. Therefore, Royal Zenith reasoned that, whatever happened to the petition, the petition was not consciously mishandled, and therefore Royal Zenith could not have been consciously indifferent when it failed to file an answer.

Martinez controverted Royal Zenith's argument by claiming that the mere existence of a procedure did not establish that Royal Zenith was not consciously indifferent toward filing an answer in this particular case. He argued that, because Royal Zenith did not produce any evidence to explain what had happened to the petition, it had not met its burden of proof. Martinez further pointed out that the procedure broke down with Vivero, and yet Vivero did not explain what had happened to the documents. Martinez also challenged Vivero's credibility and argued that the court should not believe Vivero's conclusive statements that he did not intentionally fail to forward the papers to GAB or consciously disregard them. The court denied Royal Zenith's motion for a new trial. In five points of error, Royal Zenith claims that the court abused its discretion when it denied the motion for a new trial.

As previously noted, in a motion for a new trial following a default judgment, the defendant has the burden of alleging and proving facts to show that his failure to answer was not intentional or the result of conscious indifference. *Craddock*, 133 S.W.2d at 126; *Motiograph, Inc. v. Matthews*, 555 S.W.2d 196 (Tex.Civ.App. —Dallas 1977, writ ref'd n.r.e.). Once the defendant has alleged facts which, if true, negate intentional or consciously indifferent conduct, the defendant will have met his burden on this point unless the plaintiff controverts the defendant's claim. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex. 1984). When the plaintiff controverts the defendant's allegations, the trial court must look to the knowledge and acts of the defendant to determine whether his conduct was the result of conscious indifference or intentional disregard. *See Strackbein*, 671 S.W.2d at 39. Once the trial court has made its determination, an appellate court will not reverse the decision unless there has been an abuse of discretion. *Strackbein*, 671 S.W.2d at 38.

Although the court denied Royal Zenith's motion, the record does not contain findings of fact or conclusions of law to indicate how the court reached its decision. Therefore, the judgment must be upheld on any legal theory that finds support in the evidence. *See Strackbein*, 671 S.W.2d at 38; *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977). There appear to be two incidents in the record of the hearing from which the court could have concluded that Royal Zenith's failure to answer was intentional or the result of conscious indifference. One incident was when Ryan called Doumas to tell him about the potential default in *Martinez*, and Doumas jumped to the conclusion that Ryan was referring to the default in *Meister v. Royal Zenith Corp.*, which had already been entered. Although Doumas should have asked more questions and listened more carefully in light of the importance of a default situation, Doumas' failure to act did not amount to conscious indifference or intentional disregard. *See United Beef Producers, Inc.*

*v. Lookingbill,* 528 S.W.2d 310 (Tex.Civ. App.—Amarillo 1975, writ ref'd n.r.e.). Thus, Doumas' failure to act on Ryan's information would not justify a denial of the motion for a new trial.

The other incident from which the court could have determined that Royal Zenith was consciously indifferent about filing an answer was the testimony and evidence regarding the breakdown of the procedure when Vivero received the documents and failed to forward them to their usual recipients. At the hearing, Vivero testified that he has a procedure for forwarding petitions after he receives them. He testified that the normal procedure is for him to receive a transmittal letter and the original documents from Greenstein. Upon receiving them, he initials the transmittal letter and returns it to Greenstein to indicate that he has received the documents. Vivero then copies the documents and sends a copy to GAB, Doumas, and Higgins & Johnson. To indicate that he has mailed the copies, Vivero writes the date that he mails the copies on the original of the document along with the initials of the persons to whom he has forwarded the papers. Finally, Vivero places the original and one copy of each document in his files.

In his affidavit attached to the motion for a new trial, Vivero swore that he did not know of any facts to indicate that he did not follow his normal procedure for forwarding Martinez' petition. However, he acknowledged at the hearing that, when he signed his affidavit, he knew that: (1) he had initialed the transmittal letter, thus indicating that he had received the original petition; (2) none of the usual recipients had received a copy; and (3) neither the original nor any copies were in his files. Vivero then admitted that all of these facts indicated that he had *not* followed his normal procedure.

Martinez impeached Vivero further by pointing out that Vivero had misrepresented his procedure for forwarding documents in his affidavit attached to the motion for a new trial in *Meister.* Vivero swore in that affidavit that he maintained a chart analysis log to record what documents came into and went out of his office. However, at the hearing on the motion for a new trial in *Martinez,* Vivero admitted that he did not keep such a log. Vivero claimed that Poller, Royal Zenith's in-house counsel, told him that his procedure resembled a chart analysis log and that he should sign the *Meister* affidavit because they were in a hurry. Nevertheless, the fact remains that Vivero admitted that he had sworn to an affidavit that he believed was not true.

The court, as the fact-finder at a hearing on a motion for a new trial, has the duty of ascertaining the true facts surrounding the default circumstances. *See United Beef Producers, Inc.,* 528 S.W.2d at 312. In exercising this fact-finding power, it is within the court's province to judge the credibility of the witnesses and to determine the weight to be given their testimony. *See Ryan v. Morgan Spear Associates, Inc.,* 546 S.W.2d 678, 685 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r. e.). The court may choose to believe part of a witness' testimony and disregard other portions of his testimony. *Id.* Also, in exercising its fact-finding power, the court is not bound to accept conclusive statements of a witness or internally inconsistent explanations. *See Folsom Investments, Inc. v. Troutz,* 632 S.W.2d 872, 875 (Tex.Civ.App.—Fort Worth 1982, writ ref'd n.r.e.).

Based on the evidence before it, the court could have reasonably concluded that Vivero was not a credible witness. The court could have reasoned that, if Vivero had misrepresented his procedure in a previous affidavit to avoid a default judgment, then he could have been misrepresenting the facts regarding Martinez' petition to avoid a default judgment in this case. Because Royal Zenith's procedure broke down after Vivero received the papers, he is the person best able to explain what happened to the documents. Yet, all he offered as an explanation were his conclusive statements that he did not know what he had done with the petition but that he did not act consciously

indifferent toward it. The court was not required to believe his conclusive statement. *See Folsom Investments, Inc.,* 632 S.W.2d at 875. He swore in his affidavit that he did not know of any facts to indicate that he did not follow his normal procedure but he admitted at the hearing that all of the facts indicate he did *not* follow the procedure. The court was not bound by this internally inconsistent testimony. *See id.*

Because Vivero's testimony was blatantly inconsistent, the court could have refused to believe his claim that he did not remember what he had done with the documents. The following is typical of Vivero's testimony:

[By Martinez' counsel]

Q At the time that you filed your affidavit in this case, you swore that you always followed your normal procedure. Is that true?

A No, it's not, I don't think I said I always followed it.

Q I'm going to read from your affidavit again, starting with paragraph three, the second sentence where you say "I have a normal procedure which I always follow when I receive suit papers from C.T. Corporation Systems." Does that refresh your memory?

A Yes. Yes, it does.

Q All right. You stated there that you always follow that procedure?

A That's correct. I was thinking of the deposition where I did not say I always followed it.

Q Okay. But in the affidavit you said you always followed it?

A That's correct.

Q In the deposition you admitted that you don't always follow that?

A Right.

In light of the inconsistencies and possible falsehoods in Vivero's testimony, we cannot say that the court abused its discretion when it disregarded Vivero's claims that he was not consciously indifferent and concluded that Royal Zenith had failed to meet its burden of proof. Because the only witness who could best explain what had happened to Martinez' petition was impeached several times after claiming that he could not remember what happened, we must defer to the court's decision on Vivero's credibility and veracity.

Accordingly, we hold that it was not an abuse of discretion for the court to deny Royal Zenith's motion for a new trial. Points one through five are overruled, and the default judgment is affirmed.