CAPITAL DATA CORPORATION,
Plaintiff,

v.

CAPITAL NATIONAL BANK, New York
Capital Bank, N.A., Federal Deposit In-
surance Corporation, and Resolution
Trust Corporation, and "John Doe and
Jane Doe Nos. 1–10 Inclusive," the last
ten names being fictitious and un-
known to plaintiff, the person or par-
ties intended being the tenants, occu-
pants, persons or corporations, if any,
described in the complaint herein, De-
fendants.

No. 90 Civ. 8173 (LBS).

United States District Court,
S.D. New York.

Nov. 7, 1991.

Anthony F. Bellucci, Flushing, N.Y., for plaintiff.

Saterlee Stephens Burke & Burke (Daniel G. Gurfein, of counsel), and Federal Deposit Ins. Corp. (Marc E. Wieman, of

counsel), New York City, for defendants FDIC and RTC.

## OPINION

SAND, District Judge.

This case involves Capital Data Corporation's ("CDC") efforts to foreclose on a mortgage it was allegedly given by Capital National Bank ("CNB") as collateral to secure CNB's performance on a stock purchase agreement. Because CNB was declared insolvent in July 1990, the Federal Deposit Insurance Corporation ("FDIC") and Resolution Trust Corporation ("RTC") were named as defendants in the action. On the consent of both plaintiff and defendant FDIC, the RTC has been dismissed as a party. The FDIC, however, has brought a motion for summary judgment to dismiss the complaint and to grant its counterclaim based on a notice of pendency filed by CDC.

The FDIC's summary judgment motion proposes four grounds for granting summary judgment to dismiss the complaint: (1) that based on the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. section 1821(d), the Court lacks subject matter jurisdiction over CDC's claim; (2) that the mortgage does not meet the statutory requirements enumerated in 12 U.S.C. section 1823(e); (3) that the mortgage is unenforceable because the contract upon which it was based has been properly repudiated; and (4) that a foreclosure remedy is barred by 12 U.S.C. section 1825(b). In addition, the FDIC seeks summary judgment on its counterclaim pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") section 1521 (McKinney's 1981).[1] Because this Court agrees that it lacks subject matter jurisdiction under FIRREA for the reasons set forth below,

the FDIC's motion for summary judgment dismissing the complaint and for relief on its counterclaim is granted.

## I. BACKGROUND

CDC's claim arises out of extended business correspondence between CDC and CNB, the relevant features of which are summarized below. On December 31, 1986, CDC and CNB entered into an agreement (the "1986 Agreement") which addressed several business matters. The 1986 Agreement provided that CDC would perform data processing services for CNB, that CDC would pay CNB $1,700,000 for certain equipment and software licenses, and that CNB would retain an option (the "Option") to purchase all of CDC's stock at any time after January 1, 1988 at a price to be agreed upon. Affidavit of Daniel G. Gurfein (July 31, 1991) (hereinafter "Gurfein Aff."), Exh. A. By letter agreement dated July 6, 1989 (the "1989 Agreement"), CNB acknowledged that it had exercised the Option at some point previously and that a March 30, 1989 Certificate of Value had fixed the purchase price of the CDC stock at $1,700,000. While CNB agreed to pay that sum at an unspecified future date, it also stated that it was "not presently able to do so." Gurfein Aff., Exh. B; Affidavit of Anthony F. Bellucci (Apr. 16, 1991) (hereinafter "Bellucci Aff."), Exh. 2. On January 12, 1990, CNB executed a mortgage (the "Mortgage") giving CDC a $1,700,000 lien on the building in which CNB conducted its business (the "Premises"). Signed by CNB's Chairman, Renan Mazorra, the Mortgage specifically stated that it was "given as collateral security to guarantee that [CNB] will exercise its option."[2] Gurfein Aff., Exh. C; Bellucci Aff., Exh. 3. As a February 22, 1990 letter from CDC's Chairman reflects, the Mort-

---

1. N.Y. RPAPL § 1521 provides in relevant part: that final judgment in an action involving real property shall declare the validity of any claim by any party to the action and shall also declare that any person whose claim has been adjudged invalid be "forever barred from asserting such claim ... and may direct that any instrument purporting to create any such ... instrument be delivered up or cancelled of record...."

2. The FDIC concedes the validity of the 1989 Agreement and the Mortgage solely for the purposes of this motion. *See* Memorandum of Law in Support of the FDIC's and the RTC's Motions for Summary Judgment at 3 n. 1.

gage was not to be recorded unless problems with the stock purchase agreement arose. *See* Bellucci Aff., Exh. 7.

On July 6, 1990, the Office of the Comptroller of the Currency declared CNB insolvent and appointed the FDIC as receiver. On July 12, 1990, pursuant to its statutory obligations, the FDIC mailed CDC a notice of CNB's insolvency and of CDC's right to file its claims against CNB, with proof, by October 16, 1990.[3] *See* Affidavit of Frank J. Recca (July 12, 1990) (hereinafter "Recca Aff.") (attached as Exhibit A to Affidavit of Marc E. Wieman in Further Support of the FDIC's and the RTC's Motions for Summary Judgment (October 10, 1991)). In addition, on July 13, 1990, August 12, 1990 and September 12, 1990, the FDIC published a general notice to creditors in the New York Times, alerting them to the insolvency and to an October 10, 1990 deadline for filing claims against CNB. Gurfein Aff., Exh. E. The FDIC also examined CNB's records, which failed to disclose the existence of the Mortgage, the notice of exercise of the Option, or CNB's ownership of CDC stock. Affidavit of Louis Vitolo ¶ 3 (Feb. 8, 1991).

On August 10 and August 15, 1990, the FDIC mailed letters to CDC, informing CDC that it was exercising its right as receiver to disaffirm certain contracts and leases to which CNB was a party. The letters again notified CDC of its right to file a claim based on the disaffirmances, and included an address at which claims could be filed. Gurfein Aff., Exh. F; Bellucci Aff., Exh. 10. Shortly thereafter, on August 21, 1990, CDC recorded the Mortgage. Gurfein Aff., Exh. C; Bellucci Aff., Exh. 3.

On August 31, 1990, Javier Garcia, the Chairman of CDC, sent a letter to Luciano Garcia, the Liquidator in Charge of the CNB insolvency.[4] This letter, which CDC characterizes as a formal claim for the $1,700,000 owed on the agreement to purchase its stock, "implores" the liquidator to include CDC in "whatever type of negotiations" the FDIC might have regarding the

building where CNB conducted its business. Bellucci Aff., Exh. 8. On September 25, 1990, the FDIC sent CDC another letter, stating that it was disaffirming CDC's data processing contract with CNB and advising CDC of the procedure for filing a claim based on that disaffirmance. Bellucci Aff., Exh. 8. On November 6, 1990, CDC's Chairman (Javier Garcia) sent another letter to the FDIC liquidator (Luciano Garcia), explaining that he was enclosing certain "payments" that he, his brother, and CDC owed the FDIC for a "line of credit" they once had with CNB. Bellucci Aff., Exh. 11. Despite the apparent lack of connection between the FDIC's letter of September 25, 1990 and either of Javier Garcia's letters, CDC characterizes the November 6, 1990 letter as a "supplementation" of its August 31, 1990 "claim" based upon the Mortgage. *See* CDC's Memorandum of Law in Opposition to FDIC's and RTC's Motions for Summary Judgment at 4.

On November 23, 1990, CDC filed a notice of pendency on the Premises and initiated this mortgage foreclosure action in the New York State Supreme Court, New York County. In December 1990, the FDIC removed the action to this Court pursuant to 28 U.S.C. section 1446 and 12 U.S.C. section 1819(b)(2)(B).

On December 19, 1990, more than two months after the FDIC's October 16, 1990 filing deadline, CDC submitted a formal claim based on the Mortgage with the FDIC. Gurfein Aff., Exh. H. On January 28, 1991, the FDIC notified CDC that its claim had been disallowed, denied, and rejected on the basis of its untimeliness. Gurfein Aff., Exh. J.

## II. DISCUSSION

▇▇▇ In deciding defendant's motion for summary judgment, this Court must examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there exists a "genuine

---

3. As discussed below, CDC disputes having received this notice.

4. As far as this Court knows, Javier Garcia and Luciano Garcia are not related.

issue as to any material fact" or whether the moving party is entitled to a judgment "as a matter of law." Fed.R.Civ.P. 56(c). The Court's role in such a context is not to resolve disputed factual issues, but rather to determine whether the record, taken as a whole, supports any issues that require a trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nevertheless, the very language of the summary judgment standard provides that "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). Materiality is determined by reference to the substantive law applicable to the case at hand, and factual disputes irrelevant to its outcome "will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

The above guidance is important in this case because CDC contests a number of the FDIC's factual allegations. CDC disputes the FDIC's claim that it mailed its July 12, 1990 Notice to Creditors (the "Notice"), and suggests that it should not be bound by the FDIC's October 16, 1990 deadline for submitting claims against CNB. *See* Affidavit of Javier Garcia in Opposition to Summary Judgment Motion ¶ 4 (October 24, 1991) (hereinafter "Garcia Aff."). In addition, CDC alleges that even had it received the Notice, neither it nor any of the FDIC's subsequent letters applied to the Mortgage at issue. *Id.* ¶¶ 9, 13, 14, 20. Finally, CDC challenges the FDIC's contention that it did not file a claim until December 1990, arguing that its August 31, 1990 and November 6, 1990 letters served as claims based on the Mortgage. *See* CDC's Memorandum of Law in Opposition to Motion for Summary Judgment at 4. As the discussion below makes clear, while these factual issues may be "material" to the question of whether we have subject matter jurisdiction under FIRREA, they are not sufficiently "genuine" to require resolution by trial. Summary judgment for the FDIC must therefore be entered accordingly.

## A. Lack of Subject Matter Jurisdiction Under FIRREA.

As its first basis for summary judgment, the FDIC maintains that this Court lacks subject matter jurisdiction to review plaintiff's claim. Specifically, the FDIC argues that plaintiff has forfeited its right to judicial review by failing to adhere to the mandatory administrative claim procedure set forth in FIRREA's section 1821(d).

Congress enacted FIRREA in 1989 in response to the growing crisis in the financial industry. Its goal, as described in *Circle Indus., Division of Nastasi–White, Inc. v. City Federal Savings Bank*, 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd*, 931 F.2d 7 (2d Cir.1991), was to provide "a detailed regulatory framework so as to restore the financial integrity of the thrift industry's deposit insurance fund and to 'provide funds from public and private sources to deal expeditiously with failed depository institutions.'" *Id.* at 451 (citing P.L. 101–73, 103 Stat. 183, § 101[8]). In furtherance of that goal, FIRREA granted the FDIC broad powers in its capacity as receiver to determine claims against the failed institutions, and established a comprehensive administrative claim process, adherence to which is a prerequisite to judicial review of those claims. Since an understanding of that administrative structure is essential to the resolution of the FDIC's motion, its relevant aspects are set forth below.

After the FDIC is appointed receiver of a failed institution, the claims process begins with a directive that the FDIC "promptly publish a notice to ... creditors to present their claims, together with proof, to the receiver" by a specified date no less than 90 days from the date of publication. 12 U.S.C. § 1821(d)(3)(B). In addition to that generalized notice obligation, the Act requires the FDIC to "mail a notice similar to the notice" described above to all *known* creditors of the institution at their last address appearing on the institution's books. § 1821(d)(3)(C).

Once a claim is submitted with the requisite proof, the FDIC is permitted 180 days

to determine whether to allow or disallow it. § 1821(d)(5)(A)(i). Upon disallowance, or in the event that the FDIC fails to make a determination within the 180 day period, claimants have the right to seek either administrative or judicial review in a district court, provided they do so within 60 days of the disallowance or end of the 180 day period. § 1821(d)(6)(A).

While *de novo* judicial review is therefore available to a diligent claimant, claimants who fail to adhere to the statute's requirements may forfeit their right to that procedure. If a claimant does not submit his claim until after the date specified in the FDIC notice to creditors, section 1821(d)(5)(C) directs that the untimely claim "shall be disallowed and such disallowance shall be final." Similarly, where a claimant fails to seek review of an FDIC disallowance within the allotted 60 day period, section 1821(d)(6)(B) directs that the claim "be deemed to be disallowed ... such disallowance shall be final, and the claimant shall have no other rights and remedies with respect to such claim." Finally, the statute expressly limits the jurisdiction of the district courts to claims that have first been presented to the receiver:

*Limitation on Judicial Review*

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver....

§ 1821(d)(13)(D).

Examining the parties' arguments in light of this statutory backdrop, it is clear that if the FDIC can show that there is no genuine issue of material fact as to either the FDIC's compliance or CDC's non-compliance with the FIRREA procedures, summary judgment dismissing CDC's complaint for lack of subject matter jurisdiction should be granted. For the reasons that follow, this Court finds that the FDIC has satisfied its burden and is entitled to the relief sought.

*The FDIC's compliance with FIRREA.*

■ In the first place, the FDIC has adequately demonstrated its own compliance with the notice requirements set forth in section 1821(d)(3)(C). The FDIC's moving papers include a "Notice to Creditors" dated July 12, 1990, which advised creditors of CDC's insolvency and of the process for filing claims against the failed institution. Gurfein Aff., Exh. D. That letter, which enclosed a proof of claim form, explained that the form had to be "completed in full, signed by a properly authorized signatory, notarized and returned along with supporting documents" by October 16, 1990 in order to avoid forfeiting the claim pursuant to section 1821(d)(5)(C). The FDIC has also submitted the affidavit of Frank J. Recca, then an FDIC account officer, swearing that the notice was mailed to general trade contractors, including CDC, on July 12, 1990. *See* Recca Aff. Thus, the FDIC has carried its burden of demonstrating its own adherence to the statute's requirement of prompt publication to creditors.

In an effort to rebut this threshold showing of compliance, however, CDC offers several arguments to dissuade this Court from granting summary judgment for the FDIC. CDC maintains: (1) that the July 20, 1990 Notice to Creditors was not mailed; (2) that even if mailed, it was not received; and (3) that even if received, it did not apply to claims based on the Mortgage. Each of these possibilities is addressed in turn.

■ In support of its first argument, that the Notice to Creditors was not mailed, CDC points out that the July 20, 1990 letter reflects no specific addressee, and that the FDIC has not presented any other proof that the document was sent to CDC. Nevertheless, the affidavit of Marc E. Wieman, one of the FDIC's staff attorneys, adequately explains the absence of such "proof" in stating:

2. Due to the increase in volume of bank insolvencies and the resulting increase in the number of creditors, the FDIC no longer keeps individual copies of Notice to File Claim letters mailed to

creditors. Rather, it is the usual business practice for an FDIC account officer assigned to an insolvent bank to prepare an affidavit contemporaneous with the time of the mailing of such notices swearing that the notices were mailed to each creditor appearing on the bank records. For expediency, the notice is not addressed to any individual creditor.

3. Pursuant to this practice, on July 12, 1990, the date on which the Notice to the creditors of Capital National Bank was mailed, Frank J. Recca, then an FDIC account officer, prepared such an affidavit, a copy of which is annexed hereto as Exhibit A.

4. Annexed hereto as Exhibit B is the page of the computer printout of the listing of all Capital National Bank creditors on which Capital Data Corp. appears.

An examination of the exhibits at issue confirms that Mr. Recca prepared the mailing affidavit and that CDC was one of the creditors listed on the attached computer printout. This showing satisfies the Court that the required mailing was, in fact, made by the FDIC, and that CDC's challenge as to that issue is not a "genuine" one calling for resolution by trial.

In a second effort to challenge the FDIC's compliance, CDC argues that even if the Notice was mailed to CDC, it was never received. *See* Garcia Aff. ¶ 4 (stating that "There is no record of a notice to creditors having ever been received by CDC during the month of July, 1990"). As an initial matter, this Court notes that CDC's receipt of the Notice may be irrelevant to the jurisdictional question at issue: on its face, FIRREA requires only that the FDIC *"mail* a notice" to creditors to initiate the claims process, § 1821(d)(3)(C) (emphasis added), and at least one federal

court has held that the failure to file a timely claim, even where the FDIC conceded that the creditor had not received the notice, divests the court of subject matter jurisdiction to review the claim. *See Parker North American v. RTC,* 131 B.R. 452 (Bkrtcy.C.D.Cal.1991).[5]

Even if the statute does require the creditor's receipt of the notice, however, the FDIC has made a sufficient showing to entitle it to the presumption that a letter properly addressed and mailed is received. 57 N.Y.Jur.2d Evidence and Witnesses § 158, at 365–66 (1986). To invoke that presumption, a party must first produce evidence of mailing, either by offering the testimony of the person who actually mailed the letter or through indirect evidence such as proof that the mail was sent through office procedures followed in the regular course of business. *See DeSimone v. Siena College,* 1991 WL 64857 at *2, 1991 U.S. Dist. LEXIS 5529 at *6 (N.D.N.Y. Apr. 25, 1991). As demonstrated above, the FDIC has produced such evidence, by offering Mr. Recca's affidavit that he mailed the Notice to all listed creditors, by demonstrating that CDC was included on the relevant list, and by offering Mr. Wieman's affidavit that such a mailing conformed to FDIC procedures used in the ordinary course of placing a bank into receivership. Once such proof of mailing is established, moreover, "the mere denial of receipt does not rebut that presumption. There must be ... some proof that the regular office procedure was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable." *Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir.1985) (citations omitted). Here, rather than raising a factual issue as to whether the

**5.** In *Parker North American,* the FDIC conceded that although it sent the statutory notice to the creditor's last known address, the creditor had since moved and therefore did not receive the notice. Despite that lack of actual notice, the court held:

> Debtor has not followed the [FIRREA] Procedures in asserting the Claim. Debtor's excuse is that it did not receive the Notice in time to file the Claim. This fact is undisputed. How-

ever, FIRREA does not create any exception to adherence to the Procedures. Furthermore, it clearly states that no court has the power to adjudicate a claim except in accordance with the Procedures. Since debtor did not file the Claim with the RTC in accordance with the Procedures, this court does not have subject matter jurisdiction to conduct a de novo review of the Claim.

*Id.* at 456.

FDIC's mailing policy was carefully executed, CDC has simply stated that there is no record of its having received the Notice. Such a conclusory denial of receipt is insufficient to deprive the FDIC of the presumption to which it is entitled, and CDC's effort to present this factual dispute as a "genuine" one must fail as well.

Finally, CDC argues that even assuming that the Notice was mailed and received by CDC, it applied only to claims relating to the provision of general trade services, and not to claims based on the Mortgage. *See* Javier Garcia Aff. ¶¶ 7–9, 13 & 14. To support this contention, CDC refers to the Recca Affidavit, which states that the July 12, 1990 Notice was mailed to "general trade contractors," and to the attached computer printout, which lists CDC as one such "vendor." CDC also calls attention to certain "more specific" letters sent by the FDIC in subsequent weeks, such as the August 15, 1990 letter disaffirming CDC's lease with CNB and the September 25, 1990 letter disaffirming its data processing contract with CNB, and suggests that the FDIC ought to have written such a letter with respect to the Mortgage before CDC could be expected to file a claim based upon it. *See* Javier Garcia Aff. ¶ 20.

■ Despite the inventiveness of the above arguments, this Court finds them to be utterly disingenuous. In the first place, CDC's thesis that the Notice applied only to "general trade-related" claims could only have been developed recently, since only upon receiving a copy of the Recca Affidavit did CDC learn that it had been contacted on the basis of its status as a general contractor. At the time that it actually received the Notice, by contrast, CDC would have known only that it had received a generalized "Notice to Creditors," which directed *"all creditors"* of CNB to file their claims by the October 16, 1990 deadline in order to have them considered by the receiver. *See* Gurfein Aff., Exh. D (emphasis added). Thus, despite CDC's suggestion to the contrary, the language of the Notice supplied no reason for concluding that the claims subject to the October deadline were limited to those of a "general trade-related" nature.

■ Even less convincing is CDC's argument that if the FDIC were to set a deadline for submitting claims based on the Mortgage, it should first have sent a letter specifically disaffirming the Mortgage. As CDC concedes in its memorandum opposing the motion, however, at the time the FDIC took over as receiver of CNB, the Mortgage was neither recorded nor contained in CNB's records, so the FDIC would have had no way of knowing about it. *See* CDC's Memorandum of Law in Opposition to the FDIC's and RTC's Motions for Summary Judgment at 8 ("Admittedly, the Mortgage belonged to CDC, and was therefore properly in CDC's possession and not CNB's."). Thus, CDC's rather illogical proposition that the FDIC should have specifically disaffirmed an agreement it knew nothing about also fails to raise a genuine factual issue in dispute.

*CDC's Non–Compliance.*

■ While CDC has therefore failed to present any genuine issues of fact regarding the FDIC's compliance with FIRREA's notice provisions, the FDIC has also adequately demonstrated CDC's failure to adhere to the statute's mandatory claim procedure. As Exhibit H to the Gurfein Affidavit makes clear, CDC did not submit a claim based on the Mortgage until December 19, 1990, over two months after the October 16, 1990 deadline set by the FDIC Notice. On January 28, 1991, the FDIC sent CDC a Notice of Disallowance, informing CDC that its claim had been "denied and rejected entirely" on the basis of its untimeliness. Gurfein aff., exh. J. As a result of that untimeliness, and section 1821(d)(5)(C)'s direction that disallowances based on untimeliness "shall be final," the FDIC is correct in asserting that we lack the subject matter jurisdiction to review CDC's claim *de novo.*

Because this Court, in granting summary judgment, must be certain that no reasonable jury could find that CDC adhered to the mandatory claims procedure, however, we must address CDC's assertion that it

did, in fact, file a notice of claim before the October 16, 1990 deadline. CDC resists the FDIC's charge of non-compliance by proffering an August 31, 1990 letter from Javier Garcia, the Chairman of CDC, to Luciano Garcia, the Liquidator in Charge of the CNB insolvency. Bellucci Aff., Exh. 8.

Simply put, despite CDC's attempt to characterize that letter as a formal claim on the Mortgage (*see* CDC's Memorandum of Law in Opposition to the FDIC's and RTC's Motions for Summary Judgment at 4), that document cannot constitute a claim as a matter of law. Under section 1821(d)(3)(B)(i), the FDIC is directed to advise creditors "to present their claims, together *with proof*," before the date specified by the receiver. Although "proof" is not defined in the statute, the FDIC's notice to CDC included a proof of claim form and explained that it had to be "completed in full, signed by a properly authorized signatory, notarized and returned along with supporting documents ... or the claim [would] be forfeited." *See* Gurfein Aff., Exh. D. Javier Garcia's letter certainly does not include a proof of claim form, nor does it include the required notarization and supporting documents. Even were the Court to disregard those deficiencies, however, the fact that the letter fails to state any amount or even identify the basis of its claim renders it impossible to consider the document a claim "with proof" under even the broadest definition of "proof." Thus, because CDC has not raised any "genuine" issue as to whether it filed a timely claim,[6] our previous conclusion that summary judgment is warranted because we lack subject matter jurisdiction to review CDC's complaint remains intact.

*Summary judgment for the FDIC is warranted.*

While it may appear harsh to deny plaintiff judicial review—especially when the untimeliness of its filing will also bar it from seeking administrative review, *see* § 1821(d)(5)(C)—our holding is amply supported by both the legislative history underlying FIRREA and recent cases applying the statute. As the House Banking, Finance and Urban Affairs Committee Report recommending passage reflects, Congress was sensitive to the need to meet constitutional concerns while simultaneously empowering the FDIC "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 215. Firmly stating that "[r]esort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC," the report explained that requiring the "exhaustion of streamlined administrative procedures" was necessary to "allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." *Id.* at 214 & 215.

Nor have other courts hesitated to require adherence to FIRREA's mandatory claims adjudication process as a prerequisite to judicial review. In *Circle Indus., Division of Nastasi–White, Inc. v. City Federal Savings Bank,* 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd,* 931 F.2d 7 (1991), for example, the plaintiff contractor brought a number of actions against the defendant banks based on the plaintiff's claim that it had continued to provide labor and construction material in reliance on the banks' representations that it would be paid for its work. Before the action was brought, the RTC had been appointed receiver of several of the banks. Because the plaintiff had failed to submit a claim in accordance with § 1821(d)(3)(B), the district court granted the RTC's motion to dismiss for lack of subject matter jurisdiction, observing that in "enacting FIRREA, Congress intended litigants like Circle Industries to first submit their claims against failed saving and loan institutions to the RTC or FDIC before commencing an action." *Id.,* 749

---

**6.** CDC also argues that its letter of November 6, 1990 constitutes a claim. Although that document suffers from the same informality and lack of specifics as the earlier letter, this Court need not even consider whether it constitutes an adequate claim because it was submitted some three weeks after the October 16, 1990 deadline.

F.Supp. at 455; *see also FDIC v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3d Cir.1991) ("FIRREA's claims procedure in section 1821(d) is exclusive. Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821."); *Resolution Trust Corp. v. Elman,* 761 F.Supp. 245 (S.D.N.Y.1991) (recognizing that the "statutory claim process is mandatory for all creditors of insolvent banks"); *Tuxedo Beach Club Corp. v. City Federal Savings Bank,* 737 F.Supp. 18 (D.N.J.1990) (requiring plaintiffs to process their claims through RTC's administrative channels before resorting to the district court).

Finally, while these cases merely required dismissal or stay of judicial proceedings until the claimants exhausted their administrative remedies while CDC has forfeited its right to judicial review by failing timely to pursue the administrative remedy, that result is nonetheless a fair one. If claimants were able to bypass the requirement of presenting claims to the receiver before seeking judicial review simply by filing in an untimely manner, FIRREA's goal of enabling the receiver to deal expeditiously with claims against the failed institutions would be severely compromised.

In sum, the FDIC has satisfied its burden of showing that there are no genuine issues of fact to be resolved concerning this Court's lack of subject matter jurisdiction to review CDC's claim. Accordingly, the FDIC's motion for summary judgment dismissing the complaint in this action is granted.

### B. *The FDIC's Motion for Summary Judgment on its Counterclaim.*

■ As a final matter, we must decide whether to grant the FDIC relief on its counterclaim pursuant to N.Y. RPAPL section 1521. 12 U.S.C. section 1819(b)(2)(A) confers federal jurisdiction in "all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party." Therefore, despite our finding that we lack subject matter to review CDC's claim based on the Mortgage, we none-

theless have jurisdiction to consider the FDIC's counterclaim.

■ Article 15 of the RPAPL establishes procedures for parties claiming an interest in real property to compel the determination of any claim adverse to such an interest. Section 1521 provides that final judgment in such an action shall declare the validity of any claim by any party to the action and that "any party whose claim to ... an interest in the property has been adjudged invalid ... be forever barred from asserting such claim." In addition, the section permits the judgment to "direct that any instrument purporting to create any such ... interest be delivered up or cancelled of record."

As our above discussion of the FIRREA claims process suggests, CDC's failure to file a timely notice of claim not only permits the FDIC to enter a "final" disallowance under section 1821(d)(5)(C) but prevents this Court from reviewing the claim *de novo.* *See* 12 U.S.C. § 1821(d)(13)(D). As such, the FDIC is entitled to judgment under N.Y. RPAPL section 1521 declaring CDC's interest in the Premises invalid and directing that the Mortgage and notice of pendency be delivered up and cancelled of record. Thus, summary judgment on the FDIC's counterclaim is granted as well.

SO ORDERED.