**RESOLUTION TRUST CORPORATION, et al., Appellants,**

v.

**PARK LEASING COMPANY d/b/a Maytag Financial Services Corporation, Appellee.**

**No. 10–92–157–CV.**

Court of Appeals of Texas, Waco.

May 28, 1993.

Rehearing Denied June 23, 1993.

Foster Reese, III, Chapman & Reese, Dallas, for appellants.

Pierre A. Kleff, Jr., Killeen, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

Park Leasing Company (Park), an Iowa corporation doing business as Maytag Financial Services Corporation, sued Fortune Financial Federal Savings Association (Fortune), James Cox (an officer of Fortune), and Resolution Trust Corporation (RTC) for the breach of a "hypothecation" agreement

executed by Cox on Fortune's behalf. When the defendants did not answer, the court granted Park a joint and several default judgment against all three defendants. RTC, acting in its corporate capacity and as receiver for Fortune, and Cox filed a motion to vacate the judgment and for a new trial, which was overruled by operation of law. RTC and Cox appeal the denial of the motion. We will reverse the judgment and order the trial court to dismiss the cause for the lack of subject-matter jurisdiction.

### PARK'S PETITION

Park alleged in its original petition that on December 20, 1989, Cox executed a hypothecation agreement on Fortune's behalf. It attached a copy of the agreement to the petition. Park contends that the legal effect of the agreement was to grant it a security interest in a certificate of deposit issued by Fortune to the Strack Look Company, Inc., a lessee under a lease held by Park. The security interest, according to Park, was to guarantee Strack Look Company's performance of the lease.

Park further alleged that Fortune breached the hypothecation agreement at a later date by allowing Strack Look Company to withdraw the funds represented by the certificate of deposit. According to the petition, when Fortune and Cox refused to honor the hypothecation agreement upon Park's demand, Park mailed a letter to RTC, dated May 16, 1991, demanding that RTC honor the agreement. A copy of the May 16 letter was also attached to the petition. Finally, Park alleged that RTC refused to honor the hypothecation agreement and refused to pay Park the funds represented by the certificate of deposit.

At the hearing on the motion to vacate the default judgment, Park introduced into evidence its May 16, 1991, letter to RTC, along with a second letter to RTC dated September 12, 1991. A June 20, 1991, letter from RTC to Park was also admitted into evidence during the hearing.[1]

### PARTIES' CONTENTIONS

RTC and Cox allege in their first point that the court erred in entering the default judgment because it lacked subject-matter jurisdiction of the suit.[2] They contend that Park never pled and proved that it had exhausted its administrative remedies. Park argues, however, that it complied with the administrative claims procedure by sending two letters to RTC outlining its claim and by RTC not taking any action to disallow the claim within 180 days. Moreover, it contends that RTC's letter of June 20, 1991, written in response to the May 16 letter, shows that RTC considered the May 16 letter a formal claim. Thus, Park insists that it had exhausted RTC's administrative remedies before filing suit on January 24, 1992, because more than 180 days had elapsed without any action by RTC to disallow the claim.

### SUBJECT–MATTER JURISDICTION

Exhaustion of administrative remedies is a statutory prerequisite for court action on a claim against RTC as receiver of a failed financial institution. *Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir.1992). The failure to exhaust administrative remedies deprives the court of

---

1. A statement of facts of the hearing at which the default judgment was entered is not before us. The dissent would indulge a presumption that the missing statement of facts contains evidence which established the trial court's subject-matter jurisdiction. That presumption, however, is not available in a direct attack on a default judgment. *McKanna v. Edgar*, 388 S.W.2d 927, 929–30 (Tex.1965).

2. RTC also contends that the federal courts have exclusive jurisdiction of suits against it. Section 1441a(*l*)(3)(A) provides that RTC, acting in any capacity, may remove any suit or proceeding from a state to a federal court, if the removal

action is initiated within thirty days after RTC is served and the suit or proceeding is filed after August 9, 1989. 12 U.S.C.A. § 1441a(*l*)(3)(A)(ii) (West Supp.1993). RTC never filed any motion to remove Park's suit, and a removal action is now barred. *See Resolution Trust Corp. v. Filippone*, 745 F.Supp. 404, 406 (E.D.Tex.1990) (suit remanded to state court when RTC's motion to remove not timely filed). Logically, Congress must have intended state courts to have jurisdiction over suits on claims against RTC or the removal provision would be superfluous and nonsensical.

subject-matter jurisdiction over a claim against RTC. *Id.;* 12 U.S.C.A. § 1821(d)(13)(D) (West 1989). Section 1821(d)(6)(A) permits a claimant to file suit only after filing a claim with the RTC and then only after the RTC has either disallowed the claim or the 180–day period for determining the claim has expired. *Meliezer,* 952 F.2d at 882; 12 U.S.C.A. § 1821(d)(6)(A).

## THE LETTERS

On May 16, 1991, the attorney for Maytag Financial Services Corporation (Park) wrote the following letter to RTC:

Resolution Trust Corporation

ATTN:  C. Robert Rainwater
        Staff Attorney

3500 Maple Avenue, 12th Floor

Dallas, Texas 75210

RE:  Fortune Financial—Maytag
       Financial Services Corporation

Dear Mr. Rainwater:

On December 20, 1989, a hypothecation agreement (copy enclosed) was executed by Fortune Financial whereby a certificate of deposit (copy enclosed) was pledged as collateral on a lease to Maytag Financial Services Corporation. The underlying lease agreement is in default, and Maytag requested the liquidation of the CD (copy enclosed). Despite additional [inquiries], no action has been taken on the liquidation request.

Demand is hereby made on behalf of Maytag for liquidation of the CD per the pledge. Please advise as to what action is necessary to liquidate this CD. Your prompt response will be appreciated. Thanks.

Sincerely,

/s/

Pierre A. Kleff, Jr.

In response, RTC wrote Kleff this letter on June 20:

Mr. Pierre A. Kleff, Jr.
Kleff & Associates, P.C.

112 East Avenue D
[Killeen], Texas 76541
Re: SL–7206; Fortune Financial Federal S & L Assoc.

Copperas Cove, Texas—In
Receivership
Maytag Financial Services Corporation

Dear Mr. Kleff:

I am responding to your letter dated May 16, 1991, to Mr. Rainwater regarding the above referenced matter. We are currently in the process of gathering all pertinent documents from the institution. This effort has been delayed due to some personnel changes taking place at Fortune Financial, but we expect to receive the requested information no later than June 28.

Please feel free to contact me at (214) 443–2285, if you have any questions regarding this matter.

Sincerely,

/s/

Sonya Sauter

Paralegal Specialist

Finally, on September 12, 1991, Kleff wrote RTC the following letter addressed to C. Robert Rainwater, Staff Attorney:

Dear Mr. Rainwater:

This office wrote you a letter on May 16, 1991, regarding the status of a certificate of deposit which was pledged as collateral on a lease to Maytag Financial Services Corporation by Strack Look Company, Inc. at Fortune Financial. On June 24, 1991, we received a response from Sonya Sauter indicating that we should be provided the requested information no later than June 28, 1991.

On September 5, 1991, my office administrator contacted you telephonically to make an [inquiry] as to the above and you indicated that you would look into the situation and get back with my office. To date, we still have not been able to establish the status of the certificate of deposit in question. I request again that you investigate this situation and

provide my office with the information requested. Your assistance in this matter will be greatly appreciated. Thank you.

Park's May 16 letter is a demand that RTC take action on a prior request to Fortune to liquidate the certificate of deposit and an inquiry about "what action is necessary to liquidate this CD." That the purpose of the letter was to request information and not to make a formal claim against RTC for a definite sum of money is made clear in these excerpts from Park's September 12 letter:

"This office wrote you a letter on May 16, 1991, regarding the *status* of a certificate of deposit.... [W]e received a response from Sonya Sauter indicating that we should be provided the *requested information* no later than June 28, 1991.... To date, we still have not been able to establish the *status* of the certificate of deposit in question. I request again that you investigate this situation and *provide my office with the information requested.*"

(Emphasis added).

Section 1821(d)(3)(B)(i) requires the RTC to "promptly publish a notice to the depository institutions's creditors to present their claims, *together with proof,* to the receiver by a date specified in the notice which shall not be less than 90 days after the publication of such notice." 12 U.S.C.A. § 1821(d)(3)(B)(i). Although "proof" is not defined in the statute, a letter to RTC that fails to state the amount of any claim or identify the basis of a claim "renders it impossible to consider the document a claim 'with proof' even under the broadest definition of 'proof'." *See Capital Data Corp. v. Capital Nat. Bank,* 778 F.Supp. 669, 677 (S.D.N.Y.1991).

Under the hypothecation agreement, Park's security interest in the proceeds of the certificate of deposit extended only to the amount of unpaid liability on Strack Look Company's lease held by Park and to the payment of expenses associated with the collateral (certificate of deposit), attorney's fees and legal expenses. Any remaining proceeds belonged to Strack Look Company. Assuming that Fortune or RTC breached the hypothecation agreement, RTC would be liable only upon proof of the amount of delinquency on the Strack Look Company lease and the other expenses. In none of its letters did Park ever make a demand upon RTC for a specific sum of money. Thus, the May 16 letter cannot be considered a claim with proof, "even under the broadest definition of 'proof'," because it does not state the amount of any claim against RTC. *See id.*

■ Park contends, however, that the court has subject-matter jurisdiction because RTC never published notice or mailed it a notice of the deadline for filing a claim based on the hypothecation agreement. The record contains a Publisher's Affidavit and a Notice to Fortune's creditors, published in the Killeen Daily Herald in October, November, and December 1990, notifying creditors of RTC's appointment as Fortune's receiver and directing creditors to "present their completed Proofs of Claim with supporting documentation to the Receiver by January 22, 1991,...." The letters from Park clearly show knowledge that RTC was acting in the capacity as receiver for Fortune.

Even if RTC failed to comply with the notice requirement of section 1821(d)(3)(B)(i), that would not excuse Park's failure to file a claim or thereby vest the trial court with subject-matter jurisdiction. *See In re Parker North American,* 131 B.R. 452, 456 (Bkrtcy.C.D.Cal. 1991) (cited and quoted in *Capital Data Corp.,* 778 F.Supp. at 675 n. 5).

## DISPOSITION

RTC AND FORTUNE

Park filed suit without ever initiating or exhausting RTC's administrative remedies applicable to claims against assets of a failed financial institution in the hands of the receiver. Accordingly, the trial court lacked subject-matter jurisdiction of the suit against RTC and Fortune. *See* 12 U.S.C.A. § 1821(d)(13)(D); *Meliezer,* 952 F.2d at 882. We sustain point one with respect to RTC and Fortune.

Cox

■ Park identified Cox in the petition as an officer and employee of Fortune and alleged that he executed the hypothecation agreement on Fortune's behalf. All of the allegations against him, in fact, relate to his liability in a representative rather than an individual capacity. The question arises, therefore, whether the trial court's lack of subject-matter jurisdiction over the suit against RTC, Cox's current employer, requires a similar disposition as to Cox. We hold that it does.

■ The employer-employee relationship is most analogous to that of agent-principal. 3 TEX.JUR.3D *Agency* § 3 (1980). Under the law of agency, an agent acting within the scope of authority on behalf of a disclosed principal is not personally liable on a contract executed on the principal's behalf. *Heffron v. Pollard*, 73 Tex. 96, 11 S.W. 165, 166 (1889). There are, however, several exceptions to this general rule. 3 TEX.JUR.3D *Agency* §§ 157–161 (1980). In fact, a third party may not sue both the principal and the agent but must elect between the two. *Id.* When the court renders judgment against both the agent and the disclosed principal, the appellate court can require the third party to make the election on appeal and can reform the judgment accordingly. *Fort Terrett Ranch Co. v. Bell*, 275 S.W. 81, 83 (Tex.Civ.App.–Austin 1925, no writ).

Whatever cause of action, if any, Park may have against Cox in his capacity as an agent of RTC, although not derivative of the right to sue and recover against RTC, is nevertheless so intertwined with a cause of action against RTC as to be inseparable. Without subject-matter jurisdiction over RTC, the disclosed principal, in the suit for breach of the hypothecation agreement, the court also lacked subject-matter jurisdiction over an action against Cox, RTC's agent, for breach of the same agreement. We also sustain point one as it relates to Cox.

We reverse the default judgment against Fortune, Cox, and RTC, and remand with instructions for the trial court to dismiss the cause for lack of subject-matter juris-diction. Because of our disposition, the remaining points are not reached.

VANCE, J., dissents.

VANCE, Justice, dissenting.

Appellants are (1) the Resolution Trust Corporation as receiver of Fortune Financial Federal Savings Association (RTC–FFFSA), (2) James R. Cox (Cox), an individual, and (3) the RTC in its corporate capacity (RTC). They appeal from a default judgment awarding Park Leasing Company dba Maytag Financial Service Corporation (Park) a joint and several judgment against the Association, Cox, and the RTC.

I would affirm the judgment of the trial court because Appellants have not shown that the court abused its discretion in failing to grant them a new trial.

INCOMPLETE STATEMENT OF FACTS

The record contains only a statement of facts from the hearing on Appellants' motion for new trial. On June 11, 1992, Appellants requested that the court reporter prepare a statement of facts containing:

(1) All testimony and argument of counsel presented by Plaintiff to the Court in support of the Judgment by Default.

(2) All testimony presented to the Court at the hearing held April 23, 1992, on Defendants' Motion for New Trial.

(3) All argument of counsel presented to the Court at the hearing held on April 23, 1992, on Defendants' Motion for New Trial.

Appellants took no steps to show that a statement of facts from the default-judgment hearing is not available. No stipulation, testimony, or affidavit of the court reporter, or certificate of the judge evidencing the unavailability of a statement of facts appears in the record. *See* Michael A. Pohl & David Hittner, *Judgments by Default in Texas*, 37 Sw.L.J. 421, 438–41 (1983).

The majority recognizes that the subject matter of the suit against RTC–FFFSA could be within the jurisdiction of the District Court of Coryell County if Park had exhausted its administrative remedies, *i.e.,*

properly filed a claim that was expressly denied or denied by the passage of time. The opinion does not hold that the court did not acquire jurisdiction over the RTC–FFFSA because of any defect in the issuance, service, or return of process; rather it sustains RTC–FFFSA's *factually-based* attack on the court's jurisdiction, *i.e.,* that Park failed to exhaust its administrative remedies by filing a claim with the RTC–FFFSA. In reviewing such a factually-based attack, we should—in the absence of a statement of facts from the default judgment hearing—presume that the court heard sufficient evidence to support the default judgment against all three Appellants.[1] *See Duplantis v. Noble Toyota, Inc.,* 720 S.W.2d 863, 865 (Tex.App.—Beaumont 1986, no writ); *Brunson v. Pittman & Harris,* 640 S.W.2d 91, 92–93 (Tex. App.—Fort Worth 1982, no writ); *Baen–Bec, Inc. v. Tenhoppen,* 548 S.W.2d 799, 801 (Tex.Civ.App.—Eastland 1977, no writ). If the default judgment is supported by sufficient evidence, it is less likely that the court abused its discretion in failing to grant Appellants' motion to vacate the judgment and grant them a new trial.

## STANDARD OF REVIEW

Appellants are complaining of the court's failure to grant their motion to vacate the default judgment and grant them a new trial. The standard of review is whether, in denying the motion, the court abused its discretion. *See Johnson v. Edmonds,* 712 S.W.2d 651, 652 (Tex.App.—Fort Worth 1986, no writ); *Cornerstone Alternatives v. Patterson Olds.,* 696 S.W.2d 702, 704 (Tex.App.—Fort Worth 1985, no writ); *Royal Zenith Corp. v. Martinez,* 695 S.W.2d 327, 329 (Tex.App.—Waco 1985, no writ). The court, as the fact finder at a hearing on a motion for a new trial, determines the credibility of the witnesses and the weight to be given to their testimony. *Royal Zenith,* 695 S.W.2d at 330. An abuse of discretion does not exist when the court bases its decision on conflicting evidence and the evidence reasonably supports its conclusion. *Executive Tele–Communication Systems v. Buchbaum,* 669 S.W.2d 400, 403 (Tex.App.—Dallas 1984, no writ). Stated another way: If reasonable minds could differ as to the result, the decision of the trial judge would not be unreasonable or arbitrary. *Navistar Intern. Corp. v. Valles,* 740 S.W.2d 4, 6 (Tex. App.—El Paso 1987, no writ).

## APPELLANT RTC–FFFSA

RTC–FFFSA presented no evidence at the motion for new trial. Park presented one witness, its attorney's office administrator. She testified that letters were written to the RTC; that she spoke by telephone with Robert Rainwater, Staff Attorney for the RTC; that she inquired in a telephone conversation with Don Farr, a Program Director for RTC, about the proper person to serve with citation; and that a representative of Fortune Financial Federal Savings Association, which was still in operation, gave her the name of John Mann as the proper person to serve with citation and an address where citation could be served.

Based on the evidence adduced at the hearing, I cannot agree that the court abused its discretion in denying RTC–FFFSA's motion. The letter dated May 16, 1991, quoted in the majority opinion, shows that Park (1) notified the RTC–FFFSA of the basis for its claim (the pledge of a certificate of deposit as collateral on a lease), (2) made a prior request to FFFSA for "liquidation of the CD," (3) stated the amount of its claim (the amount of the certificate of deposit), and (4) made a demand on the RTC for payment. In *Capital Data Corp. v. Capital Nat. Bank,* the FDIC had sent to creditors a "proof of claim" form and required that the form be "completed in full, signed by a properly

---

1. *McKanna v. Edgar,* upon which the majority relies, concerns a direct attack on a default judgment and, in that context, dispenses with the presumption that the recitals in a judgment that process was duly issued, served, and returned are true; it does not discuss the rule that a missing statement of facts is presumed to support the judgment. *McKanna v. Edgar,* 388 S.W.2d 927, 929–30 (Tex.1965). Cases citing *McKanna* follow the same analysis. *See e.g., Metcalf v. Taylor,* 708 S.W.2d 57, 59 (Tex.App.—Fort Worth 1986, no writ).

authorized signatory, notarized and returned along with supporting documents." *Capital Data Corp. v. Capital Nat. Bank,* 778 F.Supp. 669, 677 (S.D.N.Y.1991). The record does not show that the RTC–FFFSA had any similar requirements. It is difficult to imagine what additional information could have been provided to put the RTC–FFFSA on notice of the basis and amount of Park's claim.

I would reach the same result on the proof-of-claim point, even if the missing statement of facts were inconsequential to the outcome of this appeal, because the RTC–FFFSA failed to show that the court abused its discretion in denying its motion to vacate the judgment and grant a new trial.

## COX AND RTC

The RTC does not contend that filing a claim was a prerequisite to its being sued in its corporate capacity. Neither Cox nor the RTC presented any testimony at the hearing on the motion. Neither party introduced any evidence or made any argument to the trial court that would justify our holding that the court abused its discretion in refusing to grant either of them a new trial. *See Royal Zenith,* 695 S.W.2d at 329.