**Jose BETANCOURT, individually, and Lourdes Betancourt suing in the right of and on behalf of herself and all other shareholders of Renewal Arts Supply Corp., 76 Wadsworth Ave. Operating Corp., Renewal Arts Realty Corp., and Betancourt Realty Corp., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

No. 92 Civ. 5657 (LBS).

United States District Court, S.D. New York.

April 27, 1994.

Brian M. Limmer, Merrick, NY, for plaintiffs.

FDIC, New York Legal Services Office, New York City (Marc E. Wieman, of counsel), for defendant FDIC.

## OPINION

SAND, District Judge.

Jose Betancourt, suing in his individual capacity, and Lourdes Betancourt, suing on behalf of herself and other stockholders of the named corporations, bring this action pursuant to 12 U.S.C. §§ 1819(a) and 1819(b)(1) & (2), 28 U.S.C. § 1345, 28 U.S.C. § 1332, as well as pursuant to the Court's ancillary jurisdiction with regard to *FDIC v. Jose Betancourt and Renewal Arts Supply Corp.* (No. 91–5287). In an Amended Complaint filed May 21, 1993, plaintiffs claim that defendant Federal Deposit Insurance Corpo-

ration ("FDIC") is liable in its capacity as Receiver of Capital National Bank ("CNB") for failure to use assets plaintiff Jose Betancourt made available in accordance with his instructions.

Defendant FDIC moves for summary judgment, contending that this Court lacks subject matter jurisdiction due to plaintiffs' failure to exhaust administrative remedies set forth in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, § 212(d) (codified at 12 U.S.C. § 1821(d)). In addition to opposing defendant FDIC's motion, plaintiffs cross-move for an Order granting plaintiffs leave to file a late proof of claim with the FDIC as Receiver of CNB.

For the reasons stated below, defendant FDIC's motion for summary judgment is granted (and the plaintiffs' cross-motion is denied) with regard to plaintiffs Jose Betancourt and Lourdes Betancourt only insofar as she sues on behalf of shareholders of Betancourt Realty Corp. By contrast, the plaintiffs' cross-motion for relief is granted (and the FDIC's motion is denied) with regard to Lourdes Betancourt insofar as she sues ·on behalf of shareholders of the named corporations other than Betancourt Realty. The Court hereby orders the FDIC to accept and process proofs of claim as timely from the named corporations other than Betancourt Realty if filed within twenty days of the date of this Opinion. This action is dismissed with regard to Jose Betancourt and Betancourt Realty and is otherwise stayed for a period of ninety days pending the FDIC's determination of the other corporations' claims.

### BACKGROUND

Plaintiff Lourdes Betancourt, who sues on behalf of herself and others, is a shareholder of Renewal Arts Supply Corp. ("Supply"), 76 Wadsworth Ave. Operating Corp. ("76 Wadsworth"), Renewal Arts Realty Corp. ("Realty"), and Betancourt Realty Corp. ("Betancourt Realty"). Plaintiff Jose Betancourt, who sues only on behalf of himself as an

individual, is in fact also a shareholder and a director of Supply, 76 Wadsworth, and Realty. Defendant's Mem. of Law at 12. Jose Betancourt and the named corporations transacted business with CNB. From October 8, 1986 to March 8, 1990, the various plaintiffs borrowed funds from CNB pursuant to various promissory and mortgage notes. It is undisputed that on August 4, 1989, Jose Betancourt delivered a check payable to CNB to pay down some or all of plaintiffs' loans. Def.Mem. of Law at 2; Plaintiffs' Mem. of Law at 3. It is also undisputed that the amount of the check was left blank, but was later filled in as $842,-857.56, possibly by an employee of CNB, and that Mr. Betancourt's checking account was debited for this amount. *Id.*[1]

Plaintiffs allege that Jose Betancourt specifically directed CNB to use these assets to satisfy a $300,000 loan he took out on July 28, 1989. Amended Complaint at ¶ 19. Plaintiffs further contend that Mr. Betancourt directed CNB to apply the balance to the other outstanding loans at the bank in order to reduce the principal on these obligations. *Id.* at ¶ 20. In an affidavit, Mr. Betancourt claims to have made attempts to confirm that he be given credit for the payment to offset the loans. *See* letters from Jose Betancourt to CNB attached to Mr. Betancourt's Affidavit. The defendant FDIC concedes that the assets made available through Mr. Betancourt's check were never used to offset plaintiffs' various loans. Def. Mem. of Law at 2. Plaintiffs also allege that CNB and the FDIC failed to adjust the applicable interest rates in accordance with the terms of the mortgage notes. Amended Complaint at ¶ 46.

On July 6, 1990, the Office of the Comptroller of the Currency declared CNB insolvent and appointed the FDIC as receiver. On July 12, 1990, pursuant to its statutory obligations, the FDIC mailed Jose Betancourt and Betancourt Realty notice of CNB's insolvency and of plaintiffs' rights as creditors to file claims against CNB, with proof,

---

**1.** Plaintiffs state that Jose Betancourt intended to have the bank type in an amount on the check reflecting the up-to-date balance maintained in his checking account at CNB. Pls.' Mem. of Law at 3.

by October 16, 1990.[2]  *See* Affidavit of Frank J. Recca (July 12, 1990) (hereinafter "Recca Aff.") (attached as Exhibit G to Wieman Aff.). In addition, on July 13, 1990, August 12, 1990, and September 12, 1990, the FDIC published a general notice to creditors in the New York Times, alerting them to the insolvency and to an October 10, 1990 deadline for filing claims against CNB. Wieman Aff., Ex. F. None of the plaintiffs ever filed a claim with the FDIC.

## DISCUSSION

### Standard of Review

■ Summary judgment is appropriate where the moving papers and affidavits submitted by the parties "show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and the court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ The court's role in such a context is not to resolve disputed factual issues, but rather to determine whether the record, taken as a whole, supports any issues that require a trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nevertheless, the very language of the summary judgment standard provides that "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Materiality is determined by reference to the substantive law applicable to the case at hand, and factual disputes irrelevant to its outcome "will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

As its basis for summary judgment, the FDIC maintains that this Court lacks subject matter jurisdiction to review plaintiffs' claims. Specifically, the FDIC argues that plaintiff has forfeited its right to judicial review by failing to adhere to the mandatory administrative claim procedure set forth in FIRREA's section 1821(d).

### The Administrative Claim Procedure Established in FIRREA

■ As we explained in another case which also involved claims against the FDIC as receiver to CNB, *Capital Data Corp. v. Capital Nat. Bank*, 778 F.Supp. 669, 673 (S.D.N.Y.1991), Congress enacted FIRREA in 1989 in response to the growing crisis in the financial industry. Its goal was to provide "a detailed regulatory framework so as to restore the financial integrity of the thrift industry's deposit insurance fund and to 'provide funds from public and private sources to deal expeditiously with failed depository institutions.'" *Circle Industries, Div. of Nastasi–White, Inc. v. City Federal Sav. Bank*, 749 F.Supp. 447, 451 (E.D.N.Y.1990), *aff'd*, 931 F.2d 7 (2d Cir.1991) (citing P.L. 101–73, 103 Stat. 183, § 101[8] ). In furtherance of that goal, FIRREA granted the FDIC broad powers in its capacity as receiver to determine claims against the failed institutions, and established a comprehensive administrative claim process, adherence to which is a prerequisite to judicial review of those claims. Since an understanding of that administrative structure is essential to the resolution of the instant cross-motions, its relevant aspects are set forth below.

After the FDIC is appointed receiver of a failed institution, the claims process begins with a directive that the FDIC "promptly publish a notice to ... creditors to present their claims, together with proof, to the receiver" by a specified date no less than 90 days from the date of publication. 12 U.S.C. § 1821(d)(3)(B). In addition to this generalized notice obligation, the Act requires the FDIC to "mail a notice similar to the notice" described above to all *known* creditors of the

---

**2.** As discussed below, plaintiffs Jose Betancourt and Betancourt Realty dispute having received this notice. It is undisputed that the FDIC did

not mail notice to Lourdes Betancourt or the named corporations (other than Betancourt Realty) on whose behalf she sues.

institution at their last address appearing on the institution's books. § 1821(d)(3)(C).

Once a claim is submitted with the requisite proof, the FDIC is permitted 180 days to determine whether to allow or disallow it. § 1821(d)(5)(A)(i). Upon disallowance, or in the event that the FDIC fails to make a determination within the 180 day period, claimants have the right to seek either administrative or judicial review in a district court, provided they do so within 60 days of the disallowance or end of the 180 day period (whichever is earlier). § 1821(d)(6)(A).

■ While *de novo* judicial review is therefore available to a diligent claimant, those who fail to adhere to the statute's requirements may forfeit their right to that procedure. If a claimant does not submit his claim until after the date specified in the FDIC notice to creditors, section 1821(d)(5)(C)(i) directs that the untimely claim "shall be disallowed and such disallowance shall be final." Similarly, where a claimant fails to seek review of an FDIC disallowance within the allotted 60 day period, section 1821(d)(6)(B) directs that the claim "be deemed to be disallowed ..., such disallowance shall be final, and the claimant shall have no other rights and remedies with respect to such claim." Finally, the statute expressly limits the jurisdiction of the district courts to claims that have first been presented to the receiver:

Limitation on Judicial Review

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver ...

§ 1821(d)(13)(D).

■ Examining the parties' arguments in light of this statutory backdrop, it is clear that *if* the FDIC can show that there is no genuine issue of material fact as to either the FDIC's compliance or the plaintiffs' non-compliance with FIRREA's procedures, summary judgment dismissing the complaint for lack of jurisdiction should be granted. *Capi-*

*tal Data Corp. v. Capital Nat. Bank*, 778 F.Supp. 669, 674 (S.D.N.Y.1991). For the reasons that follow, this Court finds that the FDIC has satisfied its burden with respect to plaintiff Jose Betancourt and Lourdes Betancourt only insofar as she sues on behalf of shareholders of Betancourt Realty. The FDIC is therefore entitled to the relief sought only with regard to Jose Betancourt and Betancourt Realty. As for the other named corporations, FDIC's motion must be denied, and plaintiffs' motion must be granted.

### The FDIC's Compliance With FIRREA Vis a Vis Jose Betancourt and Betancourt Realty

■ The FDIC has adequately demonstrated its own compliance with the notice requirements set forth in section 1821(d)(3)(C) only with regard to plaintiffs Jose Betancourt and Betancourt Realty. The FDIC's moving papers include a "Notice to Creditors" (hereinafter the "Notice") dated July 12, 1990, which advised creditors of CNB's insolvency and of the process for filing claims against the failed institution. *See* attachment to Recca Aff. That Notice, which enclosed a proof of claim form, explained that the form had to be "completed in full, signed by a properly authorized signatory, notarized and returned along with supporting documents" by October 16, 1990 in order to avoid forfeiting the claim pursuant to section 1821(d)(5)(C). The FDIC has also submitted the affidavit of Frank J. Recca, then an FDIC account officer, swearing that the Notice was mailed to general trade contractors, including plaintiffs Jose Betancourt and Betancourt Realty, on July 12, 1990. *See* Recca Aff. Thus, the FDIC has carried its burden of demonstrating its own adherence to the statute's requirement of prompt publication with regard to these two creditors.

In an effort to rebut this threshold showing of compliance, plaintiffs offer arguments to dissuade the Court from granting summary judgment for the FDIC. First, plaintiffs dispute that the Notice was mailed to any of the plaintiffs. Plaintiffs' Rule 3(g) Statement and Counter-statement at ¶ 12. Alternatively, plaintiffs contend that even if

the Notice was mailed, it was not received by any of the plaintiffs. *Id.* These arguments—offered to suggest plaintiffs should not be bound by the FDIC's October 16, 1990 deadline for submitting claims against CNB—are addressed in turn.[3]

Plaintiffs' first argument, that the Notice was not mailed, is not supported by any evidence. Relying instead on a conclusory statement,[4] plaintiffs do not even attempt to put forward proof rebutting the FDIC's evidence that the Notice was mailed to plaintiffs Jose Betancourt and Betancourt Realty. It may be noted that the Notice sent by the FDIC is a form letter reflecting no specific addressee and that the FDIC has not presented any other proof that the document was sent to plaintiffs specifically. Nevertheless, as was the case in *Capital Data Corp. v. Capital Nat. Bank,* 778 F.Supp. 669, 674, one of the FDIC's staff attorneys, Marc E. Wieman, has provided an affidavit which adequately explains the absence of such "proof" in stating:

> 9. Due to increase in volume of bank insolvencies and the resulting increase in the number of creditors, the FDIC no longer keeps individual copies of the mass mailing of Notice to File Claim letters mailed to book creditors of a bank. Rather, it is the usual business practice for an FDIC account officer assigned to an insolvent bank to prepare an affidavit contemporaneous with the time of the mailing of such notices swearing that the notices were mailed to each creditor appearing on the bank records. For expediency, the notice is not address to any individual creditor.
>
> 10. Pursuant to this practice, on July 12, 1990, the date on which the Notice to the creditors of Capital National Bank was mailed, Frank J. Recca, then an FDIC account officer, prepared such an affidavit, a copy of which is annexed hereto as Exhibit G.
>
> 11. Annexed hereto as Exhibit H is the page of the computer printout of the listing of all Capital National Bank creditors on which both Betancourt Realty and Jose Betancourt appear.

Wieman Aff. at ¶¶ 9–11.

An examination of the exhibits confirms: 1) that Mr. Recca in fact prepared an affidavit swearing the notices were mailed to each creditor on the bank records (Recca Aff.) and 2) that plaintiffs Jose Betancourt and Betancourt Realty are among the creditors that appear on the computer printout listing CNB's creditors (Ex. H of Wieman Aff.). When weighed against the plaintiffs' absence of any evidence to the contrary, the FDIC's proof satisfies the Court that the required mailing was, in fact, made to Jose Betancourt and Betancourt Realty, and that plaintiffs' challenge as to that issue is not a "genuine" one calling for resolution by trial.

In a second effort to challenge the FDIC's compliance, plaintiffs argue that even if the Notice was mailed to plaintiffs, it was never received. Pls.' 3(g) Statement and Counterstatement at ¶ 12. At the outset, we note that in our prior decision, *Capital Data Corp.*

---

**3.** Plaintiffs also maintain that the nature of the underlying transactions take the dispute outside the procedural requirements of FIRREA. In their brief, plaintiffs discuss the *D'oench* doctrine and its statutory embodiment, 12 U.S.C. § 1823(e), at length. Because this doctrine and its statutory analogue deal with an entirely separate issue not relevant to the question of whether plaintiffs have exhausted administrative remedies, we need not reach the plaintiffs' contention that this case falls outside the scope of 12 U.S.C. § 1823(e).

12 U.S.C. § 1821(d)—as opposed to § 1823(e)—is the relevant provision for examining the question of exhaustion of administrative remedies. It clearly applies to the case at hand. Section 1821(d)(13)(D)(i) states that until administrative remedies have been exhausted, "no court shall have jurisdiction over ... any action

seeking a determination of rights with respect to, the assets of any depository institution for which [the FDIC] has been appointed receiver...." The promissory and mortgage notes held by CNB were clearly assets of a depository institution. Plaintiffs are therefore seeking a determination of their rights with respect to assets of CNB, and compliance with FIRREA is mandatory.

**4.** Rather than putting forward any evidence to contradict the FDIC proof that the Notice was mailed, plaintiffs merely state, "The Defendant did not mail and the Plaintiffs did not receive any Notice to Creditors advising the Plaintiffs that claims must be filed on or before a certain date with respect to Capital National Bank." Pl.'s Rule 3(g) Statement and Counter-statement at ¶ 12.

*v. Capital Nat. Bank,* 778 F.Supp. 669, we raised the possibility that receipt may be irrelevant to the jurisdictional question at issue given that § 1821(d)(3)(C) of FIRREA merely requires that the FDIC *"mail* a notice" to creditors to initiate the claims process. *Id.* at 675 (quoting § 1821(d)(3)(C) (emphasis added)). In raising this possible interpretation, we noted that at least one federal court has held that the failure to file a timely claim, even where the FDIC conceded that the creditor had not received the notice, divests the court of subject matter jurisdiction to review the claim. *Id.* (citing *Parker North American v. RTC,* 131 B.R. 452 (Bkrtcy.C.D.Cal.1991)). However, it must be noted that while stating that a claim "shall be disallowed" if a claimant fails to present a timely claim to the FDIC, FIRREA explicitly makes an exception for the claimant "who does not *receive* notice of the appointment of the receiver in time to file a timely claim but who files a claim in time to permit payment." § 1821(d)(5)(C)(ii) (emphasis added). *See also Althouse v. Resolution Trust Corp.,* 969 F.2d 1544, 1545 (3d Cir.1992) (suggesting receipt is relevant to determining the adequacy of notice).

■ We now clarify this point and embrace our suggestion that a letter properly addressed and mailed by the FDIC creates a rebuttable presumption of receipt by a creditor. *Capital Data Corp.,* 778 F.Supp. at 675 (citing 57 N.Y.Jur.2d Evidence an Witnesses § 158, at 365–66 (1986)). Recent cases, relying on *Capital Data Corp.,* have also adopted this rule. *See, e.g., Bass v. Perkins,* 1994 WL 9662 at *1, 1994 U.S.Dist. LEXIS 222 (No. 93–5689) at *2–3 ("Proof that a document was mailed creates a presumption that is was received"); *Laurenzano v. Crossland Sav. Bank, FSB,* 837 F.Supp. 514, 516 (E.D.N.Y.1993) ("The FDIC may be entitled to an inference that claimants receive notice after the FDIC mails it"); *In re Horton,* 149 B.R. 49 (Bkrtcy.S.D.N.Y.1992) ("A letter properly addressed and mailed is presumed to have been delivered to the addressee").

In another context, the Second Circuit has noted:

"[U]nder New York law personal knowledge [of mailing procedures] is required only to establish regular office procedures, not the particular mailing. Here, the presence of such proof establishes prima facie evidence of a mailing and creates a rebuttable presumption as to receipt. . . .

. . . . New York law holds that when, as here, there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received."

*Leon v. Murphy,* 988 F.2d 303, 309 (2d Cir. 1993) (civil rights action) (quoting *Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir.1985)). Similarly, in *Capital Data Corp.,* we opined:

To invoke that presumption, a party must first produce evidence of mailing, either by offering the testimony of the person who actually mailed the letter or through indirect evidence such as proof that the mail was sent through office procedures followed in the regular course of business.

*Capital Data Corp.,* 778 F.Supp. at 675 (citation omitted).

■ As demonstrated above, the FDIC has produced such evidence with respect to plaintiffs Jose Betancourt and Betancourt Realty, by offering Mr. Recca's affidavit that he mailed the Notice to all listed creditors; by demonstrating that these two plaintiffs were included on the relevant list; and by offering Mr. Wieman's affidavit that such a mailing conformed to FDIC procedures used in the ordinary course of placing a bank into receivership. Once such proof of mailing is established, "[t]he mere denial of receipt does not rebut that presumption. There must be—in addition to denial of receipt— some proof that the regular office practice was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable." *Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir.1985) (citations omitted). Here, rather than raising a factual issue as to whether the FDIC's mailing policy was carefully executed, plaintiffs have simply stated that they did not receive the Notice. "Such a conclusory denial of receipt is insufficient to deprive the FDIC of the presumption to which

it is entitled, and [plaintiffs'] effort to present this factual dispute as a 'genuine' one must fail as well." *Capital Data Corp. v. Capital National Bank,* 778 F.Supp. at 676.

*Jose Betancourt and Betancourt Realty's Non–Compliance*

There are no genuine issues of fact regarding FDIC's compliance with FIRREA's notice provisions vis a vis Jose Betancourt and Betancourt Realty, and moreover, the FDIC has adequately demonstrated the failure of these two plaintiffs to adhere to the statute's mandatory claim procedure. The FDIC contends (and plaintiffs do not dispute) that none of the plaintiffs filed a claim related to the monies sued for in the instant suit. Wieman Aff. at ¶ 13. Because Jose Betancourt and Betancourt Realty were mailed notice yet did not file a claim within the allowable time period, they have not exhausted their administrative remedies. As a result, this Court lacks subject matter jurisdiction with regard to Jose Betancourt and Betancourt Realty, and summary judgment must be granted in favor of the FDIC with regard to these two plaintiffs.

*The FDIC's Compliance With FIRREA Vis a Vis the Other Corporations*

While the FDIC has successfully shown it has complied with FIRREA with regard to plaintiffs Jose Betancourt and Betancourt Realty, it has not done so with regard to the named corporations other than Betancourt Realty. The FDIC in effect concedes it never mailed notice to the other named corporations. *See, e.g.,* Def.'s Mem. of Law. at 12. Moreover, we do not find these corporations received notice under a constructive notice theory, even though Jose Betancourt, a shareholder and director of these corporations, received notice. The statute mandates that the FDIC "shall mail a notice" § 1821(d)(3)(C), and we decline the invitation to subvert the plain language of this provision by watering-down the receiver's obligation to put creditors on notice. Because the Notice was never mailed to the other named corporations, said corporations were never bound by the FDIC's deadline for submitting claims against CNB. The Court therefore grants the named corporations (other than Betancourt Realty) leave to file proof of claims within twenty days of the date of this Opinion.

*CONCLUSION*

The defendant FDIC's motion for summary judgment is granted (and the plaintiffs' cross-motion is denied) with regard to plaintiffs Jose Betancourt and Lourdes Betancourt only insofar as she sues on behalf of shareholders of Betancourt Realty Corp. By contrast, the plaintiffs' cross-motion for relief is granted (and the FDIC's motion is denied) with regard to Lourdes Betancourt insofar as she sues on behalf of shareholders of the named corporations other than Betancourt Realty. The Court hereby orders that the FDIC accept and process proofs of claim as timely from the named corporations other than Betancourt Realty if filed within twenty days of the date of this Opinion. This action is dismissed with regard to Jose Betancourt and Betancourt Realty and is otherwise stayed for a period of ninety days pending the FDIC's determination of the other corporations' claims.

SO ORDERED.