**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Jose BETANCOURT and Renewal Arts Supply Corporation, Defendants.**

**No. 91 Civ. 5287 (DNE).**

United States District Court,
S.D. New York.

Oct. 17, 1994.

Satterlee Stephens Burke & Burke, New York City (Daniel G. Gurfein, Jan R. Uhrbach, of counsel), for plaintiff.

Brian M. Limmer, Merrick, NY, for defendants.

## OPINION & ORDER

EDELSTEIN, District Judge:

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), brings this action to recover the balance due on two promissory notes that were issued by defendants, Jose Betancourt ("Betancourt") and Renewal Arts Supply Corporation ("Renewal"), in March, 1990. Plaintiff moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and defendants cross-move for summary judgment.

### BACKGROUND

Over a period of years, defendant Betancourt had various dealings with Capital National Bank ("Capital") both individually and in his capacity as an officer of various companies. As part of these dealings, Betancourt signed several promissory notes in favor of Capital over an unspecified period of time. Defendants allege that on July 28, 1989, Betancourt borrowed $300,000 from Capital and signed an unsecured promissory note for that amount. On August 4, 1989, Betancourt went to Capital in order to pay various loan obligations owed to Capital. According to defendants, after Betancourt arrived at the bank, he spoke with a Capital representative and handed the representative a signed personal check made out to Capital, on which no dollar amount had been filled in. He then instructed the representative to "type in an amount on said check which was the up-to-date balance maintained in [Betancourt's] checking account at Capital National Bank." (Defendants' Brief at 5.) Pursuant to these instructions, the representative typed "$842,-857.56" on the check's "amount" line. According to defendants, this sum was the total amount of money in Betancourt's checking

account. Defendants allege that Betancourt told the representative to apply this money to satisfy the $300,000 loan that Betancourt had taken out on July 28, 1989 and to satisfy other, unspecified loan obligations that defendants owed Capital.

Defendants allege that, although Capital cashed Betancourt's check, Capital never applied the check proceeds to any of defendants' debts. Defendants allege further that Betancourt twice wrote to Capital, asking why the check proceeds had not been credited against his various loan obligations. Defendants allege that Betancourt received no response to these letters and that Capital never credited the $842,857.56 toward the loan obligations that defendants owed Capital.

Plaintiff does not contest any of these allegations. Instead, plaintiff argues that these allegations are irrelevant to the instant controversy, which concerns two promissory notes that were executed after these events transpired. The first promissory note at issue in this litigation was issued on March 1, 1990 ("the March 1, 1990 note"). On that day, defendant Betancourt signed a promissory note for $300,000 in favor of Capital. The note provides for repayment on June 5, 1990 of the entire principal plus interest at 14%. Betancourt made no payments on this note.

Although defendants admit that Betancourt signed the March 1, 1990 note, they contend that an unspecified Capital employee obtained Betancourt's signature on the note by fraud. In his affidavit, Betancourt contends that he did not know what the document was or why he was signing it. (Betancourt Aff. ¶ 10.) Further, he states that a Capital representative told him "to sign that document solely for reasons of internal bookkeeping of Capital National Bank and for no other reason whatsoever." (Betancourt Aff. ¶ 10.) Betancourt also claims that he received no money in exchange for the March 1, 1990 note. (Betancourt Aff. ¶ 10.)

The second promissory note at issue in this litigation was issued on March 8, 1990 ("the March 8, 1990 note"). On that day, Renewal executed a promissory note for $150,000 in favor of Capital, and Betancourt guaranteed

this note. The note bears a 17% interest rate and provides for repayment in forty eight equal monthly installments; the first installment was due April 4, 1990. Defendants paid eleven monthly installments on this note, but they did not pay the March 4, 1991 installment or any installments thereafter. Defendants do not claim that the March 8, 1990 note was procured by fraud.

On July 6, 1990, the Office of the Comptroller of Currency appointed the FDIC to act as receiver for Capital National Bank. On August 2, 1991, the FDIC, in its capacity as receiver for Capital, commenced this action, seeking payment of the March 1, 1990 note and the March 8, 1990 note.

## DISCUSSION

A party seeking summary judgment must demonstrate "that there is no genuine issue as to any material fact" such that it "is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The moving party has the initial burden of establishing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If the movant satisfies this prerequisite, the non-moving party may nonetheless defeat summary judgment by coming forward with specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). This Court will deny summary judgment if the evidence bolstering the non-moving party's case is sufficient to lead a rational trier of fact to return a verdict in his favor. *National Union Fire Ins. Co. v. Walton Ins. Ltd.,* 696 F.Supp. 897, 900 (S.D.N.Y.1988). In determining whether this burden has been met, however, "[i]t has long been the rule that 'on summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion.' " *Lendino v. Trans Union Credit Info. Co.,* 970 F.2d 1110,

1112 (2d Cir.1992) (quoting *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1608–09). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*, 804 F.2d at 11 (citations omitted).

The parties agree on many of the material facts in this case. The parties agree that Betancourt signed a $300,000 promissory note on March 1, 1990 and that Betancourt made no payments on this note. The parties further agree that Capital's records indicate that the note has not been paid. Further, the parties agree that Renewal executed, and Betancourt guaranteed, a $150,000 promissory note on March 8, 1990, and that only eleven of the forty eight payments on this note were made. The parties also agree that the FDIC has assumed Capital's interest in these notes.

As discussed above, defendants allege that several events transpired before the March 1, 1990 note was issued, and plaintiff does not dispute these allegations. Defendants contend that on July 28, 1989, Betancourt executed a $300,000 promissory note in Capital's favor. Defendants also contend that on August 4, 1989, Betancourt gave Capital a check for $842,857.56 with instructions that Capital should use this money to pay loan obligations that defendants owed Capital. Defendants allege that Capital cashed this check but failed to credit the proceeds against defendants' obligations. Plaintiff does not dispute these allegations but argues that they are irrelevant to the case at hand.

On these facts, the FDIC has met its initial burden of establishing the absence of a genuine issue of material fact. The parties agree that Betancourt signed the March 1, 1990 note, which designates Capital as payee, and they agree that defendants made no payments on this note. The parties also agree that Renewal issued the March 8, 1990 note in Capital's favor, and they agree that thirty seven installment payments on this loan were not made. Further, they agree that the FDIC, as Capital's receiver, is entitled to collect any debts owed to Capital. Therefore, the plaintiff has met its initial burden of setting forth valid claims for payment of the two promissory notes and demonstrating the absence of a genuine issue of material fact.

Because plaintiff has demonstrated a valid claim and the absence of any genuine issue of material fact, to defeat plaintiff's motion, defendants must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. In opposition to plaintiff's summary judgment motion, defendants have raised a panoply of defenses.

### 1. Limitations on Defenses that a Defendant Can Raise

■ In cases brought by the FDIC to recover on promissory notes obtained from banks, both statute and case law preclude defendants from raising certain defenses. *See* 12 U.S.C. § 1823(e); *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, *reh'g denied*, 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942).[1] The

---

1. Citing *Agri Export Co-op v. Universal Sav. Ass'n*, 767 F.Supp. 824 (S.D.Tex.1991), defendants assert that "the enactment of 1823(e) [sic] in 1950 as amended, [sic] preempted the common law rule of *D'oench* [sic]." (Defendants' Brief at·9.) Defendants' analysis is flawed for two reasons. First, even after § 1823(e)'s enactment, federal courts have continued to treat *D'Oench, Duhme* as good law. *See Hall v. FDIC*, 920 F.2d 334, 339 (6th Cir.1990) ("We do not believe that the common law doctrine of *D'Oench* is limited by the terms of § 1823(e). It is settled that *D'Oench* and § 1823(e) are not identical in scope. We have already recognized that the *D'Oench* doctrine has broader application than § 1823.") (citations omitted), *cert. denied*, 501 U.S. 1231, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991); *FDIC v.*

*Kasal*, 913 F.2d 487, 491 (8th Cir.1990) ("the common law doctrine of *D'Oench, Duhme* ... provides a viable independent basis for invalidating collateral agreements against the FDIC even after the enactment of § 1823(e)"), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991); *FDIC v. Hoover–Morris Enters.*, 642 F.2d 785, 787 (5th Cir.1981) ("[a]part from the protection against side agreements provided by § 1823(e), FDIC is protected under federal common law as announced in *D'Oench, Duhme*"). Second, contrary to defendants' assertion, *Agri Export* does not hold that § 1823(e) preempts *D'Oench, Duhme*. Instead, the *Agri Export* court pointed out that § 1823(e) and the *D'Oench Duhme* doctrine are not interchangeable. *See*

*D'Oench Duhme* doctrine prohibits the maker of a promissory note from asserting a defense based on any agreement that would tend to deceive the FDIC. In *D'Oench, Duhme,* defendant sold bonds to an Illinois bank. When the bonds defaulted, defendant and the bank agreed to an arrangement that would allow the bank to avoid showing a loss on the bank's books. *D'Oench, Duhme,* 315 U.S. at 454, 62 S.Ct. at 678. Defendant executed promissory notes in favor of the bank for the value of the bonds. However, the bank and defendant agreed that defendant would not repay the balance due on the notes, and the "receipts for the notes contained the statement, 'This note is given with the understanding it will not be called for payment.'" *Id.* Thereafter, the bank experienced financial difficulties, and the FDIC acquired these notes "as part of the collateral securing a loan of over $1,000,000 to the bank." *Id.* When the FDIC sued to collect on one of the notes issued by defendant, defendant argued that the FDIC could not collect because the FDIC was not a holder in due course and because "the note was given without any consideration whatever and with the understanding that no suit would be brought thereon." *Id.* at 456, 62 S.Ct. at 679.

The Supreme Court held that the issuer of a promissory note could not assert a defense of lack of consideration if "the note was designed to deceive the creditors of the public authority, or would tend to have that effect." *Id.* at 460, 62 S.Ct. at 681. The Supreme Court reasoned that several federal statutes revealed "a federal policy to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures." *Id.* at 457, 62 S.Ct. at 679. Because the *D'Oench, Duhme* defendant "was responsible for the creation of the false status of the note in the hands of the bank," the Court held that defendant was estopped from asserting defenses that would defeat federal policies designed to protect the FDIC. *Id.* at 461, 62 S.Ct. at 681. Thus, defendant could not assert a defense based on an agreement with the bank that did not clearly appear in the bank's records.

In order to afford the FDIC additional, statutory protection, Congress passed 12 U.S.C. § 1823(e). In an action in which the FDIC seeks to recover on a promissory note, this statute prohibits an obligor from asserting a defense based on any agreement that does not clearly appear in a bank's records. Section 1823(e) states:

> No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e).

In 1987, the Supreme Court held that § 1823(e) bars the maker of a promissory note from asserting a defense of fraud in the inducement against the FDIC, even when the fraud does not take the form of an express promise. *See Langley v. FDIC,* 484 U.S. 86, 90, 96, 108 S.Ct. 396, 400, 403, 98 L.Ed.2d 340 (1987). In *Langley,* the FDIC attempted to collect on a promissory note that it had acquired from a failed bank. *See id.* at 88, 108 S.Ct. at 399. Defendants contended that the bank had fraudulently induced them to sign the note by misrepresenting facts about the piece of property that defendants had borrowed the money to purchase. *See id.* at 89, 108 S.Ct. at 400. The Court held that § 1823(e) barred defendants from asserting the bank's misrepresentations as a defense because these misrepresentations were an

---

*Agri Export,* 767 F.Supp. at 834. In fact, the *Agri Export* decision follows two independent lines of analysis, the first under the *D'Oench Duhme* doctrine and the second under § 1823(e). *See id.* at 831–34.

"agreement" that tended to diminish the FDIC's interest in the loan and because this agreement failed to meet the four requirements of § 1823(e). *See id.* at 96, 108 S.Ct. at 403.

The *Langley* court recognized that § 1823(e) promotes two major policies. First, this statute allows "federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Id.* at 91, 108 S.Ct. at 401. "Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Id.* at 91–92, 108 S.Ct. at 401. Second, the Court recognized that § 1823(e)'s four requirements "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Id.* at 92, 108 S.Ct. at 401.

*2. Defenses Asserted in the Instant Case*

With these limitations in clear view, this Court now analyzes each of defendants' defenses in turn.[2]

*a. Payment in Full*

■ Defendants argue that both the March 1, 1990 note and the March 8, 1990 note were paid in full, although defendants call this defense by a variety of names. Although "that which we call a rose, by any other name would smell as sweet," William Shakespeare, Romeo and Juliet act 2, sc. 2, defendants will not enjoy the sweet smell of success by raising these defenses because each is without merit.

Defendants contend that the FDIC cannot collect on the notes because the notes were paid in full. Defendants assert that Betancourt's August 4, 1989 check for $842,857.56 created a credit that "would more than cover the amount outstanding on the two notes amounting to $450,000."[3] (Defendants' Brief at 12.)

This defense lacks merit because defendants are alleging exactly the type of unwritten side agreement that the *D'Oench, Duhme* doctrine and § 1823(e) prohibit. Defendants contend that they reached an agreement with Capital in 1989 whereby Capital would apply surplus funds from Betancourt's August 4, 1989 check against future loan obligations. Yet, defendants concede that both of the promissory notes issued in March, 1990 are not marked "cancelled" and that Capital's records do not indicate that these notes have been paid in full. Further, defendants make no allegation that Capital entered into any written agreement. 12 U.S.C. § 1823(e) requires any agreement that diminishes or defeats the FDIC's interest in a promissory note to be in writing. In addition, under the *D'Oench Duhme* doctrine, defendants are estopped from asserting as a defense any agreement that is likely to mislead federal banking authorities. Accordingly, in the absence of any written agreement that indicates that Capital agreed to apply the proceeds of the 1989 check against defendants'

---

2. In their Answer, defendants raise a number of affirmative defenses that they entirely fail to discuss in their motion papers. These defenses are: plaintiff is not a holder in due course with respect to the $300,000 promissory note; plaintiff is not a holder in due course with respect to the $150,000 promissory note; plaintiff has unclean hands; "[t]he Security Agreement/Promissory Note and Promissory Note which are the subject of the Plaintiff's Action contain a percentage of the alleged amount then owing as a computation for attorney's fees which is unreasonable and excessive and against public policy;" and failure to join an indispensable party or parties. (Defendants' Answer ¶¶ 7, 8, 9, 11, 13.) Because defendants have not come forward with specific facts that show that these affirmative defenses create a genuine issue for trial, these affirmative defenses

are insufficient to defeat plaintiff's motion for summary judgment.

3. It should be noted that if defendants' payment-in-full argument were accepted, Betancourt would be making a $300,000 gift to the FDIC. Defendants argue that $300,000 from the $842,-857.56 check were intended to pay off the balance of the March 1, 1990 note. Yet, Betancourt also asserts that he never received any money when he signed the March 1, 1990 note. If, as Betancourt contends, he never received any money from the note, it is difficult to understand why he seeks to pay it off, and thereby pay out $300,000 to satisfy a debt he never incurred. Despite the implausibility of defendants' argument, however, defendants' credibility is not at issue on a motion for summary judgment.

March, 1990 notes, defendants' payment-in-full defense fails as a matter of law.

Defendants contend that Betancourt holds a cancelled check and that this check is sufficient evidence to satisfy the requirements of *D'Oench, Duhme* and § 1823(e). (Defendants' Brief at 12.) This argument is meritless. A check that fails to specify what obligations it is intended to satisfy is not an agreement in writing. Further, defendants present no evidence that Capital's board of directors or loan committee approved any agreement under which the proceeds from the August 4, 1989 check would be used to satisfy future loan obligations, and therefore they failed to fulfill the third requirement of 12 U.S.C. § 1823(e).

In addition, defendants' argument contradicts the policy underlying the common law and statutory protections of the FDIC. In *Langley,* the Supreme Court noted that "[o]ne purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of a bank's assets." *Langley,* 484 U.S. at 91, 108 S.Ct. at 401. The Court emphasized that "when the FDIC is deciding whether to liquidate a failed bank … or to provide financing for purchase of its assets," it is vital that the FDIC be able to rely on bank records because the FDIC may need to evaluate a bank's worth " 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption of banking services.' " *Id.* (quoting *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63, *reh'g denied,* 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982)).

Defendants argue that if the FDIC had examined Capital's records carefully, it would have noticed Betancourt's August 4, 1989 check for $842,857.56. Further, despite the fact that Betancourt's check does not state what obligations it was intended to satisfy, defendants assert that the FDIC should have realized that this check was intended to satisfy the March, 1990 notes. In addition, defendants argue that the FDIC should have been able to determine from bank records that a 1989 check was intended to satisfy debts that did not exist in 1989. Defendants contend that the FDIC should have been able to deduce that Betancourt's 1989 check was meant to satisfy debts that would only come into existence in the following year. If this were the case, before the FDIC could accurately evaluate a bank's worth, the FDIC would need to sift through all of the bank's records, all of its account statements, and every check drawn against every account at the bank. Clearly, such a requirement would contradict a policy designed to enable the FDIC to evaluate a bank's worth " 'with great speed, usually overnight.' " *Id.* (quoting *Gunter v. Hutcheson,* 674 F.2d at 865).

Capital's records indicated that Betancourt and Renewal had signed promissory notes and that these notes had not been paid in full. The FDIC was entitled to rely on these records when it evaluated Capital's value. Defendants have failed to allege the existence of any written agreement, and the cancelled check for $842,857.56 does not, in itself, constitute such an agreement. Thus, defendants' payment-in-full defense is meritless.[4]

Defendants again raise the payment-in-full defense by asserting that the *D'Oench Duhme* doctrine and § 1823(e) only protect "assets" acquired by the FDIC and that the $300,000 note and the $150,000 note are not "assets" because they were paid in full at the time the FDIC acquired Capital. This argu-

---

4. In support of their payment-in-full defense, defendants cite *FDIC v. Bracero & Rivera, Inc.,* 895 F.2d 824 (1st Cir.1990). However, *Bracero* does not support defendants' position because that case involved a security interest for a promissory note, not the promissory note itself. Further, in *Bracero,* the bank issued "a credit slip indicating that its debt had been cancelled," and at a meeting of the bank's officers, the officers accepted a new debtor in the previous debtor's place. *Id.* at 826. In fact, the First Circuit recognized that

the FDIC was "apparently conceding that [the defendant's] original debt … was cancelled." *Id.* at 827. In the instant case, the FDIC is suing to collect on two notes, not on a security agreement underlying those notes. In addition, both parties agree that the notes were not cancelled, and neither party contends that Capital's officers ever agreed to cancel defendants' loan obligations. Finally, the FDIC does not concede that the notes at issue in this case were cancelled.

ment is nothing more than the payment-in-full defense phrased differently. Therefore, this defense lacks merit.

■ The payment-in-full defense next appears under the moniker "accounting." (Defendants' Brief at 11.) As discussed above, Betancourt contends that he wrote a check to Capital for $842,857.56 in August 1989, Capital cashed this check, and Capital never credited this money against defendants' loan obligations. Further, defendants argue that "if the FDIC is a transferee of notes and is also the Receiver of Capital National Bank then it has also retained liability on contingent claims asserted by Defendants against the Plaintiff." (Defendants' Brief at 11.) Defendants demand an accounting so that the money from the 1989 check can be credited against defendants' current obligations to the FDIC, including the March, 1990 notes. Defendants argue that because plaintiff has provided no such accounting, plaintiff is not entitled to summary judgment. (Defendants' Brief at 12.)

Insofar as defendants accounting defense seeks affirmative relief, this Court lacks subject matter jurisdiction. When the FDIC acts as a receiver for a bank, the bank's creditors must file a claim with the FDIC before they can seek redress in federal court. A creditor who has not filed a claim cannot bring suit in federal court because the court lacks subject matter jurisdiction. 12 U.S.C. § 1821(d)(13)(D) states:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver[.]

See also FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir.1991) (stating that the "claims procedure in section 1821(d) is exclusive. Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821") (citations omitted); Capital Data Corp. v. Capital Nat'l Bank, 778 F.Supp. 669 (S.D.N.Y.1991) (stating that § 1821(d)(13)(D) "expressly limits the jurisdiction of the district courts to claims that have first been presented to the receiver").

In the instant case, it is clear that the accounting that defendants request is a determination of their rights with respect to assets of Capital, which is a "depository institution for which the [FDIC] has been appointed receiver," 12 U.S.C. § 1821(d)(13)(D). Yet, defendants present no evidence to indicate that they filed a claim with the FDIC, and they make no assertion that they filed such a claim. Moreover, in a separate action, defendants sued the FDIC to recover the proceeds of Betancourt's $842,857.56 check, and Judge Sand rejected the claim on the ground that defendants had never filed a claim with the FDIC. See Betancourt v. FDIC, 851 F.Supp. 126, 128 (S.D.N.Y.1994) ("None of the plaintiffs ever filed a claim with the FDIC."). Because defendants have failed to exhaust their administrative remedies, this court lacks jurisdiction to determine whether the FDIC owes any money to defendants.

■ Even if this Court had jurisdiction, however, defendants cite no authority in support of the proposition that "accounting" constitutes a valid defense against the FDIC in an action for payment of a promissory note. Further, this Court is unaware of any authority that supports defendants' argument. While defendants may have demonstrated that they demanded, and never received, an accounting, defendants cite no authority that demonstrates that they are entitled to an accounting or that plaintiff's failure to provide an accounting justifies denying summary judgment in this case.

Moreover, the mere fact that the FDIC may be liable for funds that Capital owed to Betancourt does not mandate an accounting. If Capital owed money to Betancourt at the time that the FDIC was appointed to act as Capital's receiver, Betancourt could have sought to recover these funds by filing a claim with the FDIC. Indeed, while this motion was pending, Betancourt sued the FDIC to recover the proceeds of Betan-

court's $842,857.56 check. *See Betancourt,* 851 F.Supp. 126.[5]

■ Next, defendants resurrect the "payment in full" defense by asserting that Betancourt's check for $842,857.56 constituted an accord and satisfaction for various debts that Betancourt owed to Capital, including the notes at issue in this case. This argument lacks merit for several reasons.

■ First, a defendant can only raise an accord-and-satisfaction defense against the FDIC if the accord and satisfaction complies with the requirements of both § 1823(e) and *D'Oench, Duhme. See FDIC v. Krause,* 904 F.2d 463, 466 (8th Cir.1990) (rejecting defendants' accord-and-satisfaction defense because "the original notes were in the bank's files, the notes bore no notation that they had been paid, and the minutes of neither the board of directors nor the loan committee indicate any settlement agreement"); *FDIC v. Hoover–Morris Enters.,* 642 F.2d 785, 787–88 (5th Cir.1981) (both *D'Oench, Duhme* and § 1823(e) bar defendants from asserting an accord-and-satisfaction defense based on an unwritten agreement). Just as in *Krause,* defendants in the instant case seek to assert an accord-and-satisfaction defense despite the fact that the promissory notes at issue were in the bank's files, the notes bear no notation that they have been paid, and defendants have failed to produce the minutes of any meeting of Capital's board of directors or loan committee that would indicate that defendants and Capital reached a settlement agreement. On these facts, both *D'Oench, Duhme* and § 1823(e) bar defendants from asserting an accord-and-satisfaction defense.

■ Second, as a matter. of law, Betancourt's payment in August, 1989 was not an accord and satisfaction. Professor Corbin defines an "accord executory" as "an agreement for the future discharge of *an existing claim* by a substituted performance." Arthur L. Corbin, Corbin on Contracts § 1268 (1 Vol.Ed.1988) (emphasis added). It is self-evident that parties cannot reach an agreement that would discharge an existing claim

*before* the claim exists. In the instant case, defendants argue that Betancourt and Capital agreed to settle two debts, totalling over $450,000, more than six months before defendants incurred those debts. Defendants do not merely allege that Betancourt made payments on these loans before the payments were due. Rather, they contend that Betancourt made payments on these loans before defendants even borrowed the money from the bank. Unless defendants and Capital's officers were soothsayers, shamans, or sorcerers, it is simply impossible for them to agree in 1989 to settle a debt that would only come into existence in 1990. Thus, because no rational jury could rule that defendants and Capital's officers could reach an agreement in 1989 to settle a debt that did not exist at that time, defendants' accord-and-satisfaction defense fails as a matter of law.

■ Third, the accord-and-satisfaction defense fails because, according to Betancourt's own testimony, his 1989 payment to Capital was intended to satisfy debts that he owed to Capital in 1989, and defendants present no evidence that indicates that this payment was intended to satisfy future debts. In his affidavit, Betancourt states that, when he delivered the check for $842,857.56 to Capital in August, 1989, he instructed a Capital employee to "apply the balance on an equal basis to the outstanding loans which I maintained at Capital National Bank." (Betancourt Aff. ¶ 6.) Thus, Betancourt admits that the proceeds of his check were to be applied to loans that were outstanding in August, 1989. Obviously, the 1990 notes were not outstanding debts in 1989. Further, defendants present no evidence that shows that the August, 1989 check was intended to serve as payment for the March, 1990 notes. Accordingly, defendants' accord-and-satisfaction defense is meritless.

■ Like the mythical Hydra, the payment-in-full defense rears its head in defendants' brief yet again. This time, defendants argue that their liabilities to Capital should be offset against the proceeds from Betancourt's $842,857.56 check, which Capital failed

---

**5.** As noted above, this action was dismissed for Betancourt's failure to exhaust his administrative

remedies. *See id.*

to credit against his loan obligations. This defense lacks merit for many of the same reasons that defendants' other payment-in-full defenses fail. First, as discussed above, this court lacks jurisdiction to offset defendants' liabilities against monies that the FDIC allegedly owes to defendants because defendants have failed to file a claim with the FDIC and thus have failed to exhaust their administrative remedies.[6] Second, the mere fact that the FDIC may have assumed liabilities that Capital owed to Betancourt does not mandate that those liabilities be used to satisfy obligations that Betancourt owes to the FDIC. Just as the FDIC is free to sue Betancourt on the notes executed in Capital's favor, Betancourt is free to seek payment from the FDIC for liabilities that the FDIC acquired from Capital. As noted above, Betancourt sought such payment when he brought a separate action against the FDIC.

In sum, each of defendants' variations on their payment-in-full argument is without merit.

### b. Good Faith

■ In a particularly vague section of defendants' brief, defendants appear to raise a good-faith defense. (Defendants' Brief at 15–16.) Defendants cite authority that they contend "indicate[s] that *D'oench* [sic] might not apply to where the borrowers are wholly innocent of any misconduct." (Defendants' Brief at 15.) Yet, Defendants fail to explain how this proposition applies to the instant case, and they fail to offer any evidence to show that Renewal or Betancourt were "wholly innocent of any misconduct."

However, this Court need not attempt to decipher defendants' cryptic argument or search the record for evidence of defendants' good faith because § 1823(e) and the *D'Oench Duhme* doctrine preclude a defendant who has entered into an agreement that

limits the FDIC's rights from raising good faith as a defense. *See Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1516 (11th Cir.1991) ("lack of bad faith, recklessness, or even negligence is not a defense in *D'Oench* cases"), *cert. denied*, —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); *Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 49 (1st Cir.1991) ("the *D'Oench* doctrine applies where the only element of fault on the part of the borrower was his or her failure to reduce the agreement to writing") (footnote omitted); *FSLIC v. Gordy*, 928 F.2d 1558, 1566–67 (11th Cir.1991); *Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Federal Land Bank of Jackson v. Shaffett*, 757 F.Supp. 22, 24 (M.D.La.1991). Therefore, defendants' good-faith defense is without merit.

### c. Fraud

As the next line of defense, defendants argue that the March 1, 1990 note was obtained by fraud in the factum.[7] Because defendants have failed to produce any evidence that would support their claim of fraud in the factum, this defense is meritless.

■ The law recognizes two types of fraud: fraud in the inducement and fraud in the factum. A person commits fraud in the inducement when he uses misrepresentations of fact to induce a party to enter an agreement. In *Langley*, the Supreme Court ruled that a defendant can only assert fraud in the inducement as a defense if the fraudulent statements comply with § 1823(e)'s four requirements. *See Langley*, 484 U.S. at 93, 108 S.Ct. at 402. In the instant case, defendants have not raised fraud in the inducement as a defense.[8]

■ Instead, defendants raise the defense of fraud in the factum. Fraud in the

---

6. In addition, defendants cite no authority to support their argument that "offset" constitutes a valid defense under either *D'Oench, Duhme* or § 1823(e).

7. Defendants make no claim that the March 8, 1990 note for $150,000 was obtained by fraud.

8. Further, as a matter of law, defendants could not successfully bring a fraud-in-the-inducement defense because they have presented no evidence that would indicate that Capital's alleged fraudulent statements were "in writing," or "approved by the board of directors of the depository institution or its loan committee," or were recorded in "an official record of the depository institution." 12 U.S.C. § 1823(e).

factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley*, 484 U.S. at 93, 108 S.Ct. at 402. In *Langley*, the Supreme Court suggested that fraud in the factum may take an agreement outside the scope of § 1823(e) and the *D'Oench Duhme* doctrine. *See id.* at 93–94, 108 S.Ct. at 402–403; *see also FDIC v. Giammettei*, 34 F.3d 51 at *57 (2nd Cir.1994) ("the Supreme Court suggested that a defense of fraud in the factum ... would not be subject to the requirements of 12 U.S.C. § 1823(e)").

■ This Court need not decide whether fraud in the factum takes an agreement outside of the scope of *D'Oench, Duhme* and § 1823(e), however, because defendants have failed to present evidence that creates a material issue of fact as to whether Betancourt was a victim of fraud in the factum. To defeat summary judgment, defendants must demonstrate that there is a question of fact as to whether Capital procured Betancourt's signature on the March 1, 1990 note without Betancourt knowing the note's "true nature or contents." *Langley*, 484 U.S. at 93, 108 S.Ct. at 402. In other words, defendants must produce evidence that indicates that Betancourt did not understand that he was signing a promissory note.

Betancourt's deposition testimony clearly establishes, however, that he realized that he was signing a promissory note and that he knew what a promissory note was:

Q: Did you read the notes you signed?

A: Never did.

Q: Did you know what they were?

A: A note.

Q: Did you understand the note to be a piece of paper on which you were stating you owed the bank a certain amount of money?

A: Yes, sir.

Q: And did you understand that you were signing a piece of paper that said you owed the bank the amount of money that was reflected on the note?

A: Yes, sir.

(Betancourt Dep. at 38.)

In opposition to this evidence, the only evidence that defendants cite is Betancourt's affidavit, submitted with their brief in opposition to plaintiff's summary judgment motion. (Defendants' Brief at 16.) In this affidavit, Betancourt states: "I had no idea whatsoever what this document was or that it would be given any legal validity outside of some kind of internal bank memo." (Betancourt Aff. ¶ 10.) Betancourt also states: "I did not know the true nature or contents of the document." (Betancourt Aff. ¶ 10.)

■ Betancourt's affidavit raises no issue of material fact, however, because "[t]he rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991) (citations omitted); *see also Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.") (citations omitted). This rule is necessary to insure that summary judgment functions properly because "'[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Mack*, 814 F.2d at 124–25 (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969)).

■ Defendants have engaged in exactly the type of conduct that is prohibited by the rule of *Trans–Orient* and *Mack*. In his deposition, Betancourt testified that he knew he was signing a promissory note. Further, although Betancourt submitted an extensive errata sheet that corrected his deposition testimony, this sheet does not alter Betancourt's testimony that he knew he was signing a promissory note. (Limmer Aff. Ex. J.) The only evidence that defendants produce in

support of their fraud-in-the-factum defense is Betancourt's affidavit, which must be disregarded under the rule of *Trans–Orient* and *Mack*. Therefore, in the absence of evidence that creates a genuine issue of material fact, defendants' fraud-in-the-factum defense is without merit as a matter of law.

### d. Economic Duress

 Defendants argue that Betancourt was the victim of economic duress when he signed the $300,000 promissory note.[9] However, defendants point to no evidence that indicates that Betancourt was a victim of economic duress when he signed the March 1, 1990 note.[10] Instead, defendants seek to bolster their economic-duress argument by stating in their brief that Betancourt "signed the promissory note dated March 1, 1990 under the threat of impaired credit." (Defendants' Brief at 17.)

The Court need not search the record for evidence that might support defendants' position because the economic-duress defense fails as a matter of law. Both § 1823(e) and *D'Oench, Duhme* bar a defendant from raising economic duress as a defense. *See Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir.1990) ("it is irrelevant to the applicability of the *D'Oench, Duhme* rule whether [the borrower] ... was 'coerced,' [or] under 'economic duress'"), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *FDIC v. Gettysburg, Corp.*, 760 F.Supp. 115, 117 (S.D.Tex.1990) ("[t]he claim of economic duress is also barred") (citing *Langley*, 484 U.S. 86, 108 S.Ct. 396), *aff'd*, 952 F.2d 400 (5th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 70, 121 L.Ed.2d 36 (1992). Accordingly, defendants' economic-duress defense is meritless.

### CONCLUSION

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment on its claim for payment of the March 1, 1990 promissory note for $300,000 is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on its claim for payment of the March 8, 1990 promissory note for $150,000 is GRANTED.

IT IS FURTHER ORDERED that defendants' cross-motion for summary judgment is DENIED.

SO ORDERED.

---

**9.** Defendants do not raise economic address as a defense to plaintiff's claim involving the $150,000 note.

**10.** Further, although defendants contend that economic duress may take an agreement outside the scope of § 1823(e) and *D'Oench, Duhme,* (Defendants' Brief at 17), they cite no authority to support this proposition.